## J. L. MOTT IRON WORKS v. HOFFMANN & BILLINGS MFG. CO.

(Circuit Court, E. D. Wisconsin. August 12, 1901.)

1. PATENTS—PATENTABLE INVENTION—COMBINATION F OLD DEVICES.

To render a new combination of old elements or devices patentable, it must not only produce a new and useful result, but such result must be the product of the combination, and not merely an aggregate of several results, each the complete product of one of the combined elements.

2. SAME—WATER SUPPLY CONNECTIONS FOR BASINS AND BATHS.

The Hammann patent, No. 449,880, for supply connections for basins or baths, is void for lack of patentable invention; the device shown, which consists of a fixture for supplying both hot and cold water through the same nozzle, being merely an aggregation of old parts, which do not co-operate to produce any new result, as required to constitute a valid combination, and its utility being due solely to the better and simpler arrangement and connection of the parts, involving only the exercise of mechanical skill.

In Equity. On final hearing of bill for infringement of letters patent No. 449,880, for "supply connections for basins or baths," issued April 7, 1891, to Edward Hammann, assignor to the complainant. The specifications and claims of the patent are as follows:

"Bath and basin connections have before been made in which either hot or cold water, or a mixture of the two, can be delivered by one nozzle or bib into the bath or basin, and in these cases the cocks or valves for regulating the water have sometimes been below or behind the bath or basin, and in other instances they have been above the slab. The object of the present invention is to simplify the mode of construction and to facilitate the connection of the respective devices to the slab, and at the same time to combine with the hot and cold water supply pipes and cocks a standpipe and overflow that serve as a foundation or support for the respective parts that supply and regulate the hot and cold water. In the drawings, Fig. 1 is a vertical section through the nozzle or bib and the standpipe, Fig. 2 is an elevation partially in section, and Fig. 3 is a sectional plan at the line, x, x. The hot-water valve or cock, A, and cold-water valve or cock, B, are to be of any desired construction. Usually they are what is known as a 'globe valve,' the water-supplying pipes being connected by couplings at the lower ends, as seen at 2 and 3, and the water passes off laterally above the valve by the pipes, C, C', to the hollow water way, D, from which rises the mixing column, E, that passes through the slab or plate, F', surrounding the upper part of the bath tub, or beneath which the basin is attached; and there is a bib or nozzle, G, the under surface of which may rest upon the top of the slab, F, and the end is turned downwardly into the bath or basin, and the top end of the mixing column, E, passes into the bottom of this bib, and is screwed or otherwise permanently fastened thereinto; and it is usually preferable to pass the lower end of the mixing column, E, through the hollow water way, D, and fasten the lower end thereof by the nut, 4, there being washers between the nut and the surface of the water way and a collar, at 5, around such mixing column, E. The pipes, C and C', are preferably made with the water way, D, and screwed at their ends to the hot and cold water cocks, respectively. The caps, 6, of the respective hot and cold water valves, A, B, are tubular, and extend around the stem, 7, up to the sockets, 8, that pass through the slab, F; and there are flat rings or disks, H, below the flanges of the sockets, 8, and resting upon the slab, F, which rings are usually marked with the word 'Hot' or 'Cold,' to indicate the temperature of the water, and upon the upper ends of the stems, 7, are the hand wheels, I, by which the stems are turned to admit or exclude water by the respective valves. In cases where a standpipe and overflow is not used in connection with the cocks, pipes, and bib described, it is preferable to make use of lock nuts beneath the

slab and around the mixing column, E, and the tubular portions of the caps, 6, to clamp the respective parts to the slab, as at S; and I remark that these parts, thus far described, are easily constructed and attached, either to the slab of the basin or to the rim or plate of the bath tub, and the parts are highly ornamental; but the parts that are above the slab are neither large nor numerous, hence there is but comparatively little area or surface that requires to be plated and finished in the manner now usual with the best class of work. When a standpipe and overflow is made use of in connection with the parts heretofore described, the water way, D, is usually semicircular, to partially surround the standpipe, K, and be steadied thereby, and there is a tubular coupling, L, into which the upper end of the standpipe, K, is screwed, and which tubular coupling, L, passes through the slab, F, and is held in place by a lock nut, 10; and to obtain a more ornamental finish, and to support the nozzle or bib, G, I usually extend such nozzle or bib in the form of a ring, G', around the tubular coupling, L, so that such ring, G', is firmly held to the surface of the slab by the flange, 11, resting upon such ring. G', and being pressed thereto by screwing up the lock nut, 10. The standpipe, K, is to be provided with a connection at the lower end to the waste pipe or drain, and there is also usually a lateral connection to the bottom of the basin or bath tub, as seen at N, and within the standpipe is an overflow pipe, P, having a valve, 12, around the lower part thereof, which rests upon a seat below the lateral pipe, N, and serves to retain water in the basin or bath until the overflow pipe is elevated, and this overflow pipe, P, has holes in it at the level at which the water is to stand, and the pipe extends up through the tubular coupling, L, and there is a cap, Q, at its upper end, and a slot and pin by which the overflow pipe can be held up while the water is running out of the bath or basin. This standpipe, overflow pipe, valve, and cap are similar to those represented in the patent of John Demarest, No. 358,147, or such standpipe and overflow pipe might be similar to those represented in the patent of W. S. Carr, No. 170,709. This fixture, as a whole, is very neat, artistic, easily kept clean, and projects but little above the slab. It will be apparent that in consequence of the mixing column, E, passing into the hollow water way, D, and having lateral openings for the water to pass from the water ways into the column, and being held by the removable nut, 4, the hot and cold water valves can be disconnected from the mixing column and the bib by simply removing the nut, 4, without disturbing any of the other parts of the apparatus. This is a convenience, because it allows the cocks or valves, or either of them, to be separated for grinding or repairing, as may become necessary from time to time. It will also be apparent that the tubular coupling, L, may be formed with the standpipe, K, or permanently fastened thereto, and the ring, G', may be of any desired ornamental shape to surround the upper part of the standpipe, and be held by the flange, 11, when the nut, 10, is screwed up against the under side of the slab. Above the bib, and supported by the same or by the mixing column, there is a fixed cup, R, that is adapted to the reception of rings or jewelry, and, as this is a rigid fixture, there is no risk of an article placed therein being shaken out in moving either valve or the overflow pipe. I claim as my invention: (1) The combination, with the bib or nozzle, G, and the mixing column, E, therewith connected, and passing down through the slab, of the hot and cold water valves, the water ways connecting the respective valves, there being an opening through the water way, D, for the mixing column, E, to pass through, the collar, 5, around the mixing column, and the nut, 4, screwed to the lower end thereof for confining the parts in position, the mixing columns having holes through the same opening into the water way, D, substantially as set forth. (2) The combination, with the hot and cold water valves and the connecting water ways between the same, of the mixing column and the bib or nozzle above the slab, the standpipe, K, the tubular coupling at the upper end thereof, and the lock nut for connecting the standpipe permanently with the slab, and for holding the bib or nozzle to such slab, substantially as set forth. (3) The combination, with the hot and cold water supply valves and pipes, of the bib or nozzle, adapted to rest upon the top of the slab,

and having a ring extending from the rear end of such bib or nozzle, and the standpipe and its coupling, passing through the slab, and through the said ring, and holding the same in position, substantially as set forth. (4) The combination, with the hot and cold water valves and the connecting water ways between the same, of the mixing column and the bib or nozzle above the slab, the standpipe, K, opening through such slab and connected therewith, and the overflow pipe within the standpipe, substantially as set forth. (5) The combination, with the hot and cold water valves and the connecting water ways between the same, of a mixing column and a bib or nozzle above the slab and connected with the mixing column, the standpipe, K, passing through the slab and holding the bib in position, substantially as set forth. (6) The combination, with the hot and cold water supplying valves and pipes, of the bib or nozzle adapted to rest upon the top of the slab, and having a ring extending from the rear end of such bib, the standpipe passing through the slab and through the ring, and the collar for holding the ring in position, substantially as set forth."

The defendant's structure is substantially a reproduction of the patent drawings and specifications, except that "nut, 4," and its functions, specifically referred to as an element in the combination of claim 1, are not included. Infringement of claim 1 is not charged, but the fact of conflict with each of the remaining five claims as set forth is undisputed, and the issue rests upon their validity. The prior art is shown in the following letters patent: Carr's, No. 170,709; Clifford's, No. 238,855; Demarest's, No. 339,386; Demarest's, No. 358,147; Moore's, No. 418,375; Newell's, No. 399,691; Putnam's, No. 344,498; Reid's, No. 391,647.

W. P. Preble, Jr., for complainant.
Winkler, Flanders, Smith, Bottum & Vilas, for defendant.

SEAMAN, District Judge (after stating the facts). The utility and advantages of the complainant's device clearly appear, and its substantial appropriation by the defendant calls for the utmost liberality which can be extended in favor of the grant within the principles of patent law. The single question presented, however, is this: Do the claims thus involved in the infringement show a patentable combination, or a mere aggregation of the several old devices and their results? It is plain, and practically conceded by the specifications of the patent, that the elements which enter into each of the claims are old and well-known. Nevertheless:

"A new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results, each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect, without the production of something novel, is not invention. No one, by bringing together several old devices, without producing a new and useful result, the joint product of the elements of the combination, and something more than an aggregate of old results, can acquire a right to prevent others from using the same device, either singly or in other combinations, or, even if a new and useful result is obtained, can prevent others from using some of the devices, omitting others, in combination." Hailes v. Van Wormer, 20 Wall. 353, 368, 22 L. Ed. 241, 248, and cases noted; Id., 8 Notes U. S. Rep. 319.

The doctrine thus stated is well settled, and the authorities clearly exemplify these distinctions. The combination of old elements, whereby "all the constituents so enter into it as that each qualifies every other," and thus "form either a new machine of a distinct character and function, or produce a result due to the joint and co-operating action of all the elements, and which is not the mere adding together of separate contributions" (Pickering v. McCullough, 104 U. S. 310, 318, 26 L. Ed. 749, 752), constitutes patentable invention. On the other hand, the assemblage of old devices, "without securing some new and useful result as the joint product of the combination,—something more than a mere aggregation of old results,"—is not such invention (Adams v. Stamping Co., 141 U. S. 539, 542, 12 Sup. Ct. 66, 67, 35 L. Ed. 849, 851), but is "a mere matter of mechanical judgment, 'the natural outgrowth of the development of mechanical skill, as distinguished from invention.'" Florsheim v. Schilling, 137 U. S. 64, 77, 11 Sup. Ct. 20, 24, 34 L. Ed. 574, 579. In practice, however, there is frequent room for controversy in the application of these tests to claims granted for combinations; and the testimony of the experts and arguments of counsel on the part of the complainant, conceding the general rule as recited, seek to distinguish the claims in question as combinations and not mere aggregations. Impressed with the "compactness and simplicity" of the device as a whole, which have given it trade popularity, I have examined the mechanism in question in the light of every suggestion in support of patentability, but can find no tenable ground upon which this assemblage of old devices can be classified as a true combination under the definitions above given. The utmost of the contention to that end is thus stated in the brief for complainant:

"The invention is a supply connection for basins and baths," and "is intended for use in those basins or baths in which the hot and cold water are supplied through a single nozzle, instead of separate nozzles. Of course, this way of supplying hot and cold water was used long before the patent in suit, and the patentee so states. The invention, therefore, is not a new supply, but a new connection for old supplies. * * * The main purpose of the invention in controversy is to provide a simpler and more easily operated connection between the hot and cold water supply and a slab of a basin or bath, and as a secondary or auxiliary object the standpipe or overflow is by means of said connection made to serve the novel purpose of supporting all the supply devices, as well as the overflow devices. The patentee does not claim anything novel in the overflow devices as such. Overflow devices are only incidental to the invention. The invention lies in the novel character, location, and connection of the supply devices. This is prominently shown in the language of the first claim, which would have been a broad and satisfactory claim, and as such would have been infringed by the defendants, had not the solicitor, with the fatal fancy for details which is common to his profession, specified too literally the location of the parts."

And it is thereupon asserted "that each claim recites a number of elements, every one of which is dependent upon or modifies the action of one or more of the others, whereby a new and useful and consequently patentable, supply connection is produced."

The inventor, Mr. Hammann, testifies that he "claimed to have invented a new system of arranging a hot and cold water supply, which system consisted in putting everything except the mere supply

FEDERAL REPORTER.

handles and flange below the slab, out of sight, and bringing the hot
and cold water together below the slab into a mixing column, by
which it rose to the common nozzle, which nozzle I particularly adapt-
ed to lie flat on the slab, and reach from the waste or stand pipe for-
ward over the edge of the bowl"; that he thus provided peculiar sup-
porting features, and, "by making the connection between the mix-
ing column and the water ways dependent upon a single coupling nut,
[he] devised a means for connecting up the supply" which was
"much simpler and more effective than anything before known."

And Mr. Serrell, on the same behalf, as expert, thus describes the
invention:

"The novel devices of the patent in suit relate to the nozzle of particular
and convenient form, the mixing column connected thereto and supported
thereby, the lateral water way extending from the mixing column to the
valves for the hot and cold water supply, and a support for these parts,
which support is preferably connected to the standpipe as a fixed member.
An additional feature of said invention relates to a ring extension of the
said nozzle through which the standpipe passes; said part, with the slab,
being securely fastened to the standpipe. In this device all of the parts
were concealed, except the operating handle for the hot and cold water
valves, the nozzle and its ring, and the upper end of the standpipe and
upper end of the overflow pipe; this arrangement making it possible to
supply substantial and workmanlike devices without expensive finish or
design, the parts finished and plated being only those visible."

In these several versions of the alleged invention, as throughout
the argument in its support, there is failure to define the feature on
which patentability can be predicated. No co-operation is pointed
out by these old elements in a new way for a new unitary result.
Conceding that the water supply (hot and cold) and the water dis-
charge are well-known devices operating the old way, it is contended
in general terms that the supply connection is new. But this is not
true, in the sense of patentable novelty, so far as relates either to
the means of connection or to its operation, while it may be true, as
stated by counsel in the brief, "that nobody, prior to this invention,
ever had a water-supply connection for basins or baths in which an
unseen supply below the slab was connected through a mixing col-
umn to a visible nozzle above the slab, and no supply connection for
hot and cold water was ever before known in which the connection
became the supporting agent for all the parts, including the basin
and slab, instead of being itself a weight which required support from
the slab." The water-supply device, as an entirety, is well described
in the testimony of Mr. Bates, defendant's expert, as consisting "of
four parts: (1) The two valves, one for hot and one for cold water;
(2) connecting water ways connecting them; (3) a nozzle or bib; and
(4) a channel, called a 'mixing column,' connecting the bib and the
water ways,"—and the connection between the water supply and
water discharge "is in a ring at the back end of the bib or nozzle,
through which ring the tubular coupling of the standpipe extends,
thus providing an additional fastening locking the bib to the slab;
the bib being already locked to the basin by its connection with the
mixing column, connecting water ways, and valves of the water sup-
ply." Aside from the "secondary" feature, as mentioned by counsel
for complainant, whereby the standpipe "is by means of said con-

nection made to serve the novel purpose of supporting all the supply devices, as well as the overflow devices," no element appears in this assemblage of devices which is not substantially a reproduction from prior structures for like purpose and with like operation. Indeed, the only other element of which novelty is asserted is in the peculiarity of the nozzle and ring device, and that is an obvious adaptation of the Clifford faucet for like purpose, as shown in patent No. 238,855. Moreover, these old water-supply devices and the old water-discharge devices each operate in the old way in the aggregate structure, and neither group modifies in any particular the action of the other. As remarked by Mr. Bates, "There is no sort of interaction between these two."

The so-called "supporting feature," which thus appears as the final contention for patentability, is a plain expedient by obvious means whenever such form of the structure seemed desirable. It is a mere incidental provision, as indicated in the terms of the patent, and there is no such co-operation therein of the several elements entering into the entire structure as required for a valid combination. The provisions to that end act independently of the water supply or water discharge,—each of those parts operating in the same old way without modification; and the remarks in J. L. Mott Iron Works v. Standard Mfg. Co., 3 U. S. App. 386, 404, 4 C. C. A. 28, 53 Fed. 819, and authorities there cited, in reference to a combination claim in Demarest's patent, No. 358,147, are equally applicable here. The double use is not patentable. Reckendorfer v. Faber, 92 U. S. 347, 356, 23 L. Ed. 719.

The bill must be dismissed for want of equity, and the decree will be entered accordingly.