## SHEVENELL et al. v. GEO. J. KELLY, Inc.

District Court, D. Massachusetts. May 25, 1927.

No. 2544.

1. **Patents ⬤⟿237—Range of equivalents of patent, not pioneer or primary, depends on degree of invention.**

Range of equivalents in case of patent which is not a pioneer or primary depends on the degree of invention.

2. **Patents ⬤⟿72(1)—Patent is invalid for "anticipation" if prior art discloses what is later held to infringe.**

If there is found in the prior art what is later held to infringe, it would follow that patent was invalid because of "anticipation."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Anticipation.]

3. **Patents ⬤⟿26(1)—Combining old devices into new article, without new mode of operation, is not "invention."**

It is not "invention" to combine old devices into new article, without producing new mode of operation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invention.]

4. **Patents ⬤⟿328—1,447,001, for metal shoe shank, held invalid for anticipation and want of novelty.**

Winchell patent, No. 1,447,001, relating to a metal shoe shank, *held* invalid for anticipation, and also for want of novelty.

In Equity. Patent infringement suit by John N. Shevenell and others, trustees, against Geo. J. Kelly, Inc. Decree of dismissal.

H. F. Hathaway, of Boston, Mass., for plaintiffs.

Marcus B. May and Herbert A. Baker, both of Boston, Mass., for defendant.

BREWSTER, District Judge. On February 27, 1923, letters patent of the United States, No. 1,447,001, were issued on the application of Freeman J. Winchell, filed February 11, 1920. The plaintiffs are now the owners of said letters patent and bring this suit in equity against the defendant for infringement.

The patent covers an alleged new and useful improvement in "shank reinforcers," or, in other words, the invention relates to a metal shoe shank adapted particularly for use in ladies' shoes, for supporting the arch in position during wear. The defenses are noninfringement, anticipation, and noninvention.

The claims involved in this litigation are as follows:

"1. A shoe shank comprising a strip of struck-up metal curved longitudinally and provided with a depression extending lengthwise thereof, and terminating short of the ends, a relatively narrow flange on each side of the depression, and a pair of· clinching teeth in each end portion of the shank.

"2. A shoe shank comprising a relatively narrow strip of struck-up metal curved longitudinally and provided with a relatively deep intermediate transverse arch extending lengthwise thereof, but terminating short of one of the ends, a flat portion at an end of the arch having a pair of clinching teeth extending therefrom, adapted to be driven into the leather, the sides of the said arch being relatively turned outwardly to provide a substantial area of contact with the leather backing.

"3. A shoe shank comprising a narrow strip of metal, struck up into shape to give rigidity and a slight springy effect, a concave depression extending lengthwise thereof, but terminating short of the ends, the sides of the said depression flaring outwardly to provide flat, relatively narrow flanges, the thin edge of the metal being on the outer side of the flanges, flat portions at the ends of the depression and a pair of clinching teeth in each end portion of the shank and in line with the said flanges."

Winchell entered a crowded art. There had been in use for a long time shoe shanks of various types, sizes, and modes of construction.

The plaintiffs concede that all the elements embraced in the Winchell invention were old, but it is their claim that these old elements were brought together in a new and useful combination, producing new results, which constituted an advance over anything that ·was then known to the art.

These five elements which the plaintiffs claim were brought together in their shank stiffener as a new combination are these:

(a) A struck-up piece of metal longitudinally curved;

(b) A transverse arch;

(c) Flat ends;

(d) Flange on side of rib;

(e) Attaching means of four prongs, two at each end of the shank.

The defendant is manufacturing and selling three types of shoe shanks, which the plaintiffs claim are infringement of the Winchell patent. These shanks, in size and appearance, resemble the plaintiffs' shank, except that the prongs are struck from the metal piece in a somewhat different manner. These types of defendant's shanks also differ from plaintiffs' in other particulars: One has as attaching means one prong at each end of the shank; another has one prong at one end and two prongs at the other end; the third has two prongs at each end, has two ribs instead of one, extending longitudinally, but has no longitudinally extending flanges at the side of the rib.

In Winchell's specifications we find the following language:

"I am aware that the invention may be embodied in other specific forms without departing from the spirit or essential attributes thereof, and I therefore desire the present embodiment to be considered in all respects as illustrative and not restrictive, reference being had to the appended claims, rather than to the foregoing description, to indicate the scope of the invention."

[1] It is the plaintiffs' contention that, in view of this language in the specifications, they are entitled to a liberal construction of the claims, which admits of a somewhat wide range of equivalents, and that the defendant, in using two and three prongs as attaching means, instead of four, has come within that range, and that the four-prong shank, which shows a double rib without flanges, likewise falls within the range of equivalents which the plaintiffs claim go with their monopoly.

The patent not being a pioneer, or primary, patent, the range of equivalents depends upon and varies with the degree of invention. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122; Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23 S. Ct. 521, 47 L. Ed. 689; Cimiotti Unhairing Co. v. American Fur Ref. Co., 198 U. S. 399, 25 S. Ct. 697, 49 L. Ed. 1100.

In disposing of the question of infringe-

ment, therefore, it becomes necessary to determine the scope of the monopoly which is secured by the Letters Patent.

It will be noted that in his specifications Winchell called attention to the prongs at the front end in the following language:

"At the front end of the shank-piece I form securing prongs (12) struck in from the sides of the piece a short distance from the end thereof. This leaves a neck portion (13) of reduced cross-section, and therefore capable of flexing somewhat more readily opposite these prongs, and it is to be noted that the prongs themselves are struck from the head or extremity (14); i. e., the stiffener piece is secured at the end by these prongs beyond, and through, the neck portion (13). This results in permitting the extremity or end head portion (14) of the stiffener to be closely secured to the sole by the prongs (12) and in a manner so that it is not apt to be pried out on the flexing of the sole since this flexing will be taken up by the neck portion (13), which, being somewhat reduced in cross-section and not arched, is readily adaptable for this purpose. A further advantage of having the prongs (12) struck from the sides of the piece, as shown, is that it saves stock to a substantial degree."

The evidence satisfies me that this front end portion, with its reduced neck, was the only novel feature of the invention. It appears from the copies of the files in the Patent Office that, after Winchell's claims had all been rejected as old, it was pointed out that the portion of the specifications above quoted reveal the "distinctive novelty" of the device as set forth by the claims. The claims, as finally allowed, do not explicitly cover this distinctive novelty. The first claim covers a "pair of clinching teeth in each end portion of the shank." The second claim covers a "flat portion at the end of the arch having a pair of clinching teeth extending therefrom, adapted to be driven into the leather," and the third claim refers to a flat portion "at the end of the depression and a pair of clinching teeth at each end portion of the shank in line with the said flanges."

If the patent is to be read to cover only the distinctive novelty shown in the drawings and specifications, the defendant's shanks do not infringe, because none of its shanks contains this distinctively novel feature.

But the plaintiffs strenuously resist this narrow construction of their patent, and argue that the claims should be given sufficient scope to cover shanks with prongs at the end, however attached, and whether two, three, or four prongs are used. In other words, plaintiffs claim that every metal shank which is curved longitudinally and provided with a transverse arch and flaring sides, and uses prongs as attaching means, is an infringement of the claim of said patent. [2] It has been said that "that which infringes, if later, would anticipate, if earlier." Superior Skylight Co. v. Zerbe Const. Co. (D. C.) 5 F.(2d) 982. If, therefore, we find in the prior art shanks which are now held to infringe, it must follow that plaintiffs' patent is invalid because of anticipation.

Among the numerous patents relating to the prior art cited by the defendant is patent No. 403,569, issued to J. M. Watson in 1889, covering a shoe shank which had prongs at either end, a transverse arch, and all the elements of the plaintiffs' device, except that it was not longitudinally curved. I am aware that in another jurisdiction the Watson patent has been considered, and has been held not to anticipate. Sandusky v. Brooklyn Box Toe Co. (D. C.) 13 F.(2d) 238. I regret that I cannot follow the learned judge in that case in his statement that the Watson shank is neither similar in construction nor analogous in use of plaintiffs' patent.

I have carefully examined the drawings and specifications of the Watson patent. It is true that the inventor in his specification calls attention to the fact that the metallic plate is concave, or grooved, longitudinally, except at the end, and that the groove, or concavity, may be quite deep to give considerable thickness to the stiffeners, and that his drawings only show a slight concavity; but I see no inconsistency in this. Obviously the depth of the groove would vary according to the requirements of the trade. I find no warrant in the letters patent issued to Watson, or in the evidence submitted, for the assertion, made by the solicitor for the plaintiffs, that the Watson shank, when applied to the shoe, acted as a cantilever, rather than as an arch, or that it must be of tempered steel, with prongs that would not clinch. I am not satisfied that it differed in function from the Winchell invention. The Watson shank in its construction did not differ in any material particulars from the Winchell device except as to the longitudinal curve. But it cannot be said that to give a longitudinal curve to a shank to fit the particular style obtaining at the time the shank is used involves inventive genius. Changes in the longitudinal curve of the shank, necessary to adapt the shank to the particular style of high-heeled shoes, are changes that would

suggest themselves to any mechanic of ordinary ability.

Engel, No. 1,281,540, October 15, 1918, is also cited by the defendant, and in this patent we have a device for supporting arches used in the manufacturing of shoes, which is attached by prongs, and which, when applied to the sole, has both the longitudinal curve and the transverse arch.

It appeared in evidence that shanks similar to the Winchell shank, without prongs as an attaching means, had been patented and freely used by shoe manufacturers prior to Winchell's invention. Thus the Atherton patent, No. 346,572, covered all the elements of the Winchell invention, except that tacks were used as the attaching means, rather than prongs. But Winchell cannot claim to have discovered the utility of prongs as an attaching means, because these had been shown in the numerous other patents, and had been in more or less general use long prior to his alleged discovery. In several patents—for example, Watson, supra; Stevens, No. 434,131 (1890); Edler, British No. 10,496 (1907)—prongs were specified as equivalents for tacks as a means of attaching the shank stiffener.

Other patents covering devices closely analogous to the Winchell shank, notably the patents of M. Cangan, No. 1,236,820 (1917); Eaton, No. 921,379 (1909); Dunn, No. 861,166 (1907); Wood, No. 1,021,032 (1912); Bartels, No. 1,237,152 (1917)—have been considered. These patents were all cited by the defendant, and they show that the art had been thoroughly covered by the prior patents, some of which embodied substantially all of the elements of the plaintiffs' device, or some known equivalent therefor.

In view of the conclusion which I have reached, it seems unnecessary to present in detail what these various patents show.

[3] In the practical art, for many years prior to plaintiffs' discovery, shoe shanks or stiffeners were used which embodied all of the five elements of the Winchell shank; i. e., longitudinal curve, transverse arch, prongs, flat ends, and flaring sides. Sometimes these shanks, when first applied to the sole, did not have the longitudinal curve and/or transverse arch, these being imparted to it by simultaneously molding it with the portion of the shoe to which it was attached. Before August, 1919, when Winchell first disclosed his patent, various types of shank stiffeners were in more or less general use, in which were associated all of the elements of the Winchell shoe shank, and which were curved both transversely and longitudinally before appli-

cation; but the more general practice appears to have been to impart the longitudinal curve after the stiffener had been attached to the sole. The Campello Shank Company and the Keystone Sole & Shank Company had manufactured and sold in substantial quantities such types of stiffeners.

The use of prongs, instead of tacks or staples, as attaching means, did not modify or add to the functions of the stiffener; nor did the presence of a longitudinal rib or flanges. Whatever changes were wrought by Winchell were changes merely in form or shape or size, and did not in any way affect the function of the stiffener, and the evidence leaves me very much in doubt whether the Winchell shank would be regarded by the shoe manufacturer as an improvement over shanks that were then in common use. It has been held that a mere change in form, proportions, or degree, substitution of equivalents doing substantially the same thing in the same way, by substantially the same means, with better results, is not such invention as will sustain a patent. It is not invention to combine old devices into a new article, without producing any new mode of operation. Burt v. Evory, 133 U. S. 349, 10 S. Ct. 394, 33 L. Ed. 647; Hill v. Wooster, 132 U. S. 693, 10 S. Ct. 228, 33 L. Ed. 502; Smith v. Nichols, 21 Wall. 112, 22 L. Ed. 566; Florsheim v. Schilling, 137 U. S. 64, 11 S. Ct. 20, 34 L. Ed. 574.

The plaintiffs introduced evidence tending to show the extent to which their sales of the Winchell shank had increased, but this evidence fell short of demonstrating that the Winchell shank had supplanted other makes of metal shoe shanks. Their evidence did no more than to establish the fact that they had been able to secure a fair share of the trade in that field. Other shank manufacturers had sold in even larger quantities. In the calendar year ending September 1, 1925, nearly 106,000,000 pairs of women's shoes were manufactured, and during the year 1925 the plaintiffs sold 11,200,000 pairs of shanks; in 1926 they sold 14,250,000 pairs. The Keystone Sole & Shank Company, during the same two years, had sold over 33,000,000 pairs of shanks. It thus appears that the plaintiffs had considerable competition, and as a result of their efforts and energies the commercial success of the Winchell shank was no more than might naturally be expected.

[4] I have reached the conclusion, therefore, that the defendant has sustained its defense of anticipation, and that plaintiffs' patent is

void for that reason, and also for want of novelty.

A decree dismissing the bill, with costs, may be entered.