TIMKEN DETROIT AXLE CO. v. CLEVE-
LAND STEEL PRODUCTS CORPO-
RATION.

Nos. 9783, 9784.

Circuit Court of Appeals, Sixth Circuit.

March 5, 1945.

As Amended on Denial of Rehearing
April 13, 1945.

F. O. Richey, of Cleveland, Ohio (F. O. Richey, of Cleveland, Ohio, and Wm. A. Strauch, of Washington, D. C., Richey & Watts, of Cleveland, Ohio, and Strauch & Hoffman, of Washington, D. C., on the

brief), for Timken Detroit Axle Co., appellant and cross-appellee.

Newton A. Burgess, of New York City (Evans & McCoy, of Cleveland, Ohio, and Newton A. Burgess and John F. Ryan, both of New York City, on the brief), for Cleveland Steel Products Corporation, appellee and cross-appellant.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

The parties will be denominated here as they were in the District Court.

These appeals challenge a decree of the District Court which found invalid Powers patent 2,039,607, Wilson patent 2,094,-764, and Powers patent 2,107,800, all relating to improvements in oil-burning furnaces. Plaintiff's predecessor, Timken-Silent Automatic Company, was assignee of the three patents, and assigned them to plaintiff. The District Court found that if any claim in suit was valid it was infringed, but concluded that each of the claims in suit was invalid for lack of patentable invention. The court also concluded that each of the patents in suit was invalid for want of adequate disclosure, as required by R.S. Sec. 4888, 35 U.S.C.A. § 33. In addition the court found:

"6. There was a problem and plaintiff made a contribution to the solution of the problem, an improvement in oil burners that was accepted by the public and had commercial success.

"7. Defendant took a temporary license under the patents in suit and paid some royalties to the plaintiff.

"8. Some of the features of the claimed inventions are disclosed in the Heath patent, some in the Bird patent, some in the Kolva patent, some in the Braun patent, some in Exhibit DXM, and some in Exhibit DXN, and were to the extent of such disclosure anticipated by such patents. * *

"10. The improvement over prior art was accomplished by substituting metal for ceramic material and making some adjustments of parts which are mere differences of undefined degree. It merely did better what had been done before."

The court also decided that the defendant owes the plaintiff royalties under a temporary license agreement, and allowed an accounting.

Plaintiff's principal contention is that because the court found that a contribution had been made to the art, the case must be reversed under the rules laid down in the recent case of Goodyear Tire & Rubber Co., Inc. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721.

Powers patent 2,039,607, relates to liquid fuel burners of the rotary wall flame type wherein ignition and combustion take place around the outer periphery of the hearth adjacent to the wall of a combustion furnace. Among the stated objects are to reduce to a minimum the time elapsing between initial ignition and the obtaining of normal combustion conditions, and to enable the burner to properly consume a heavier and less costly fuel than has heretofore been practicable. The specification discloses that the invention consists principally in providing the hearth of such a burner with a peripheral ignition and combustion ring spaced away from the furnace wall and made of metal or other heat-conducting material. Four claims (12, 14, 17 and 18) are in issue. Claim 18, which is typical, reads as follows:

"In a liquid fuel burner of the wall flame type, a combustion chamber having a hearth and a wall extending around the periphery of said hearth, means for spraying oil toward the hearth periphery, a relatively thin combustion ring of material of high heat conductivity spaced inwardly from said wall and presenting a vaporizing face in the path of the sprayed fuel, and means for passing a current of air toward the top of the ring to produce a mixture of fuel and air for combustion in an annular zone extending from a locus above the top of the ring downwardly between said combustion ring and the peripheral wall, whereby the temperature of the vaporizing face will rapidly vary in accordance with any changes of temperature in the combustion zone."

We think the decree of the District Court, which held this patent invalid for want of adequate disclosure, must be affirmed.

The patent fails to comply with the requirements of Section 4888, R.S., Title 35, U.S.C., Section 33, 35 U.S.C.A. § 33, as to disclosure. The pertinent portion of the section reads as follows:

"Before any inventor or discoverer shall receive a patent for his invention or discovery he shall make application therefor, in writing, to the Commissioner of Patents, and shall file in the Patent Office a written description of the same, and of the manner and process of making, construct-

269

ing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; and in case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery."

In General Electric Co. v. Wabash Appliance Corporation, 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402, the Supreme Court held that it was not necessary under that record to inquire into the existence of invention or anticipation, for a claim which fails to make a disclosure sufficiently definite to satisfy the requirements of the statute is invalid on its face.

Powers, the inventor of patent 2,039,607, is chief engineer of plaintiff's oil burner division, and is plaintiff's principal expert witness. As testified by him, there were two essential elements of invention alleged to reside in patent 2,039,607: (1) The use of a metal combustion ring or rim rather than ceramic, and (2) the spacing of the metal rim away from the boiler wall.

The patent describes the rim as made of metal or other material that is a good heat conductor, and of "comparatively thin section"; as "comprising a thin fuel vaporizing wall of high heat conductivity," as "an upright sheet metal member," as "a heat resistant sheet metal combustion ring," and as "a relatively thin combustion ring of material of high heat conductivity." While in interference proceedings with reference to this patent Powers contended that the thinness of the rim is essential, and concedes this here, no dimensions of thinness are given in the patent. Experts for both parties testified that starting with a certain thickness which Powers estimated to be .025 of an inch, as the thickness was increased the claimed advantages of the structure would gradually disappear. Powers stated that at about three-eights to one-half inch there would be no advantage in the use of a metal rim over ceramic.

Plaintiff contends that the specification, since it designates the distance between the hearth and the upper part of the rim as approximately two inches, makes it possible for any mechanic to secure the dimen-

sions of the rim by the simple use of a rule; but applying this method, the thickness of the rim is about .091, or over three times as much as the inventor has testified the rim should be.

Nor is the plaintiff aided by the fact that the specification states that the combustion ring is spaced three or four inches away from the wall of the combustion chamber. Assuming, as plaintiff would have us, that the drawings are made to scale, this dimension, if applied throughout, results in a rim about four to seven times as thick as the preferred thickness of .025 testified to by Powers. Since the thinness of the metal rim is essential and is not definitely limited either in the claims or in the specification, one skilled in the art would be compelled to experiment in order to determine the proper thickness of the part. But this is strong evidence that the requirements of Section 4888, R.S., have not been followed. Cf. Libby-Owens Glass Co. v. Celanese Corporation, 6 Cir., 135 F.2d 138.

The terms "high heat conductivity" and "good heat conductivity" are repeated seven times in the claims, and the necessity that the material in the rim have this quality is again emphasized by the phrase "metal or other heat conducting material" found in the specification. What degree of heat conductivity is intended is not specified. Powers admitted that different materials have very different heat conductivities. Copper, for instance, possesses about twenty times the heat conductivity of chromium steel, whereas chromium steel, in comparison with ceramic material, has a relatively high heat conductivity. Since these important elements of the claims have not been specifically defined, we conclude that the District Court correctly held that proper disclosure has not been made under the statute. General Electric Co. v. Wabash Appliance Corporation, supra, 304 U.S. 364 at page 369, 58 S.Ct. 599, 82 L. Ed. 1402. Certainly the patentee here did not give any precise description of the new characteristic for which protection was sought.

If we are wrong in concluding that the patentee failed in his disclosure, we affirm the decree of the District Court as to the claims in suit (Nos. 12, 14, 17 and 18) for other infirmities in patentability.

The patent involves nothing but the substitution of one material, metal, for an-

other, namely, ceramic. It was Powers' first conception of his invention that he was substituting a metal hearth tile for the refractory hearth tile then in use, and no other improvement was relied on. In the first entry in his notebook on February 23, 1932, he stated, "Continuing work on substitution of metal hearth tile in place of present refractory tile." A memorandum drawn by Powers in March, 1932, with reference to the application for patent 2,039,607, which he describes as covering "in some detail" the new type of hearth segment, as well as its "characteristics of operation and advantages," states, "It was my plan to substitute metallic segments and a metallic hearth in place of the present refractory hearth bed and refractory segments." He also stated, "The segment itself was made from galvanized sheet metal and constructed merely of a thinner face and trough contour of the conventional segment." Moreover, cogent evidence that Powers did not regard the space, now so strongly relied on, as essential, exists in statements made on his behalf in interference proceedings which arose in the Patent Office. One of the opposing parties tried to amend the interference issue by submitting claims identical with certain counts except in the omission of the word "metal." Powers argued against this motion, saying:

"The use of a sheet metal ring spaced from the wall is clearly the heart of the advance over the prior art defined in the counts of the issue, and the elimination of the word 'metal' from the counts destroys their patentable significance completely. It is therefore clear that the inclusion of the spaced sheet metal ring or its equivalent is essential to the patentability of the counts of the issue, and that the omission of the word 'metal' in the proposed added counts renders these claims unpatentable over Heath patent 1,886,675." This deliberate statement with reference to what Powers considered to be the gist of the invention carries definite weight. An inventor's appraisal of his own invention is of importance. Wood v. Peerless Motor Car Corporation, 6 Cir., 75 F.2d 554.

Plaintiff in this case advanced a totally new theory of the patent, that because of the operation of the burner and the spacing of the impingement rim away from the boiler wall, the rim does not burn or corrode. Ordinary steel, therefore, it urges, can for the first time be used in these constructions with great gains in convenience and economy. It is the theory that the oil evaporating from the front of the rim produces a large amount of vapor which contains no oxygen, and prevents the oxygen present from coming in contact with the front surface of the rim, with the result that at that point there is no oxidation. Whatever oxygen is present between the rim and the boiler wall Powers says unites with the vapor "in preference to getting over on the steel," producing a small amount of carbon monoxide which in turn tends to pick up oxygen as it advances up the boiler wall, forming carbon dioxide. It is alleged that this process results in preservation of the metal rim, which heating up to the temperature of around 900 to 1,000 degrees Fahrenheit, would normally be subject to rapid oxidation if free oxygen were permitted to attack the steel, and that ordinary steel, therefore, can be used instead of the more durable and expensive alloys such as chromium steel. This is the major new improvement which plaintiff claims results from the combination of mechanical elements in Powers, 2,039,607, all admittedly old in the art.

That this conception is an afterthought is shown by the fact that no suggestion of this nature is made in the claims or specification. The provisions of the patent application refute the idea that oxidation of the rim is prevented by any new process of combustion. The application does not contemplate this, for it calls for the use of "heat resisting metal," chromium steel being preferred. The specification sets up that extreme temperatures will exist and part of the advantage claimed in the new construction is that these temperatures can be secured with metal more readily than with ceramic. In Powers patent 2,107,800, issued some eighteen months after the present patent, for an alleged improvement in the rim, Powers states that the metal used must possess high resistance "to deformation or destruction by heat."

The record presents no substantial evidence as to how long ordinary steel will withstand the temperature of 900 to 1,000 degrees Fahrenheit, shown to exist in these burners. In fact plaintiff's commercial advertising stresses the use and advantages of chromium steel, pointing out that it has a life expectancy of some 56 years. Some indefinite testimony was given as to the existence of a blue (carbon monoxide) flame behind the combustion ring; but the

trial court, which observed the operation, was not satisfied as to where the flame came from, and there was no clear testimony establishing its precise source, its method of operation, or the results accomplished by the flame if it exists.

■ We bear in mind the established rule that a patentee is entitled to all the uses and advantages of his invention whether or not he knew of them at the time of patenting. Jackson Fence Co. v. Peerless Wire Fence Co., 6 Cir., 228 F. 691, 696. However, it is not shown that ordinary steel has actually been put into commercial use in plaintiff's burners. While Powers states that burners were made of plain steel, and testified that a certain segment of ordinary galvanized steel introduced in evidence was run in the furnace for at least five months as a test, this statement is uncorroborated by any other testimony. No records of this test were introduced, nor of sales of burners stated to contain rims of ordinary steel, and the record presents no tests or reports, either scientific or commercial, as to the use or durability of soft steel in these constructions since the issuance of the Powers patent.

On the contrary, all of the substantial evidence is to the effect that the plaintiff's burners are made of chromium steel. The Shell report, issued in 1935, upon which plaintiff relies so strongly, states that the rims tested were pressed out of "heat resistant chrome steel." Powers himself testifies that they tested various materials for the rims, making "at least eight or ten analyses," and "finally adopted the chrome steel." This adoption was evidently very early in the history of the sale of these particular furnaces, for the advertising material issued by plaintiff's organization in 1935 says that the Model C chromium steel flame rims were introduced two years before, that is in 1933, and also states that the announcement that the tile flame rim would be replaced by a chromium steel rim was made in June, 1933. Specific pieces of advertising put out in 1935, 1937 and 1939 stress the advantages of the use of the "chromium steel ring." Moreover no proof is presented that the use of chromium steel in these burners has been abandoned. In fact Jacobs, who has a franchise for the distribution of plaintiff's burners for the Philadelphia area which he secured about 1940, says that he has been informed "right along" that the

metal in the plaintiff's flame rings is a chromium nickel steel compound. Jacobs also speaks of the present-day shortage in nickel and chromium as compelling him in replacement jobs to use flame rims accumulated from transfers. So far as shown by this record, plaintiff's burner, sold up to the amount of some 100,000, has a chromium steel rim. Furthermore, the testimony upon which plaintiff principally relies as to the operation of these burners is based upon the fact that the rim is of heat-resistant chromium steel, and not of soft steel. We conclude that the record does not show that any new result is attained in the use of ordinary soft steel in the Powers construction.

The space itself is clearly shown in Heath, 1,886,675, a prior patent for a wall flame burner. Heath discloses an impingement rim spaced away from the furnace wall, and in contradistinction from Powers, teaches the purpose of this spacing, stating that it is in order to hold down the flame and prevent it from curling inward away from the boiler wall, and to deflect the blast of flame and combustible mixture into contact with the wall of the furnace. Claim 35 of Heath reissue patent states specifically that the baffling means or grill is constructed "to direct part of the ignited mixture downwardly into said last-mentioned chamber," namely, the space between the impingement rim and the boiler wall, now relied on by Powers as constituting one of the principal features of his invention. As to this feature, Heath constitutes a clear anticipation. It was probably because of this that Powers originally considered that if the feature of substitution of metal for ceramic were cut out of the claims they would be unpatentable over Heath, thus in effect conceding that the space was in no sense the gist of the claimed invention. If Heath had used a rim of metal, under this record the results attained would have been substantially those of Powers.

■ We conclude, therefore, that the District Court correctly found that except for certain adjustments which are mere differences of undefined degree, all the patent presented was the substitution of a metal rim for the clay rim of the older construction; but this, as uniformly held, does not constitute invention. Hotchkiss v. Greenwood, 11 How. 248, 266, 13 L.Ed. 683; Gardner v. Herz, 118 U.S. 180, 192, 6 S.Ct. 1027, 30 L.Ed. 158; Florsheim v.

Schilling, 137 U.S. 64, 76, 11 S.Ct. 20, 34 L.Ed. 574; Kemper-Thomas Co. v. J. P. Gordon Co., 6 Cir., 67 F.2d 478; Firestone Tire & Rubber Co. v. U..S. Rubber Co., 6 Cir., 79 F.2d 948.

Furthermore, this patent is anticipated by Heath, 1,886,675, which, as stated by Powers in the interference proceedings, is for a wall-flame burner. Heath discloses all of the mechanical elements of the Powers claims, and Powers, with some hesitation, concedes this, stating that the difference is in the functioning. But the Heath burner functions in substantially the same manner as Powers. Powers conceded the closeness of Heath, not only in his memorandum above mentioned, but also in the interference proceedings, by stating that if the use of metal was eliminated, Powers, 2,039,607, would be unpatentable over Heath. Heath also employs grills. The material difference between Heath and Powers is that Heath's rim is non-metallic. Plaintiff now contends that the Heath patent was entirely impractical. The record does not bear out this contention. While an industrial burner embodying Heath's disclosure is severely criticised by Powers, he states that the important burners of Silent Automatic were domestic. A domestic construction embodying the Heath teaching was developed some time before 1925 by the Uni-Electric Corporation and called the "Uni-Electric." The domestic burner was manufactured and used extensively and found so satisfactory that the Silent Automatic Corporation of Detroit took over the whole Uni-Electric company, including the Heath patent. Thereafter the Silent Automatic installed a number of the Heath furnaces, and also used the hearth and grill in many small installations. The Heath burners that were installed or serviced by Silent Automatic had the space between the impingement wall and the boiler wall, so strongly relied on by Powers as constituting a patentable feature of his device. The plaintiff bought all the assets of the Silent Automatic Corporation about January 1, 1932. While the consideration is not stated, it was asserted, and not denied, that it was substantial.

We need not detail the discussion between the experts as to whether Bird, 1,671,340, also constitutes an anticipation. It was held by the District Court to anticipate. It discloses every essential structural element of Powers, including the metal rim or "thin fuel vaporizing wall of high heat conductivity." It is contended that Bird is a sunflower type of burner and therefore has no bearing upon a wall-flame type of construction. Defendant's expert concedes that some of the statements of Bird apply to a sunflower type and some to a wall-flame type. More important than the claimed anticipation of the Bird patent we think is the fact of the Bird prior use. It is clearly established by disinterested witnesses, memoranda, drawings and correspondence that Bird in 1925 built and used wall-flame burners equipped with an impingement rim of sheet metal. One was installed at the Bird house, one at the plant and two were sold. The rim was spaced a couple of inches from the wall of the water leg of the boiler. This operation clearly constitutes a prior use, invalidating claims 12, 14, 17 and 18 of patent 2,039,607.

■■ At most the claimed invention is merely the improvement of one element of an old combination the construction and operation of which are otherwise unchanged, and does not entitle the patentee to a repatent of his old invention by claiming that an improved element is substituted for the old element. The Heath patent has already been reissued at the instance of Heath, who stated that the application was made on behalf and with the assent of the Timken-Silent Automatic Company, and with the request that the patent be reissued to the Timken-Silent Automatic Company, which is a predecessor of the plaintiff. The Timken-Silent Automatic Company appended a statement to the application for reissue, assenting to the application and declaring that it was the assignee of the entire interest in the Heath patent. This patent expires November 8, 1949. To sustain the Powers patent will result in extending Heath by the substitution of metal for ceramic. But this cannot be done. Bassick Mfg. Co. v. R. M. Hollingshead Co., 298 U.S. 415, 424, 425, 56 S.Ct. 787, 80 L.Ed. 1251; Lincoln Engineering Co. v. Stewart-Warner Corporation, 303 U.S. 545, 552, 58 S.Ct. 662, 82 L.Ed. 1008.

■ Wilson, 2,094,764, claims 1, 9 and 16 of which are in suit, discloses grills of metal instead of clay. Grills were old in Heath, and the functioning of the grills described in Wilson, namely that of increasing the rate of combustion and in holding the flame down on the hearth ring, is exactly the functioning of the grill as described in Heath. The essential difference is that the grill is metal, which, as above

stated, does not involve patentable invention. Moreover, the use of metal baffles or deflectors had been previously shown in Kolva, 1,381.092.

Powers, 2,107,800, of which claim 9 is in suit, substitutes a separate air deflecting metal ring for the vertical portion of the metal impingement rim of 2,039,607. The plaintiff in its brief describes elements 8 and 11 of Powers patent 2,039,607 as constituting two rings which are substantially identical in function with the rings of the present patent. In addition, patent 2,107,-800 discloses the rings as single pieces instead of being composed of a number of segments, as they are in 2,039,607. Obviously there is no invention in this change. Braun, 1,715,333, discloses a metal ring for air deflection.

The District Court in its opinion stated that plaintiff had made a great contribution to the solution of the problem, and plaintiff contends that within the recent decision of the Supreme Court in Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., supra, the finding with reference to plaintiff's contribution requires reversal of the decree. We think the cited case is not controlling, for two reasons: (1) In that case a specific patentable element was added to the combination, while here the changes are not patentable, and (2) the contribution here made clearly did not result from any patentable feature. The District Court did not find specifically of what the plaintiff's contribution consisted, but it found that it was made by employing features not patentable.

Plaintiff contends that these findings are wholly erroneous, calling attention to the sweeping testimony of various witnesses to the effect that certain serious difficulties occurring in the early stages of the oil burner art, such as puff backs or explosions caused by the accumulation of excess carbon and the deposit of carbon on the electrodes, were completely eliminated by the use of the steel rim. It relies heavily on a report made by the Shell Oil Company, which indicates that the steel impingement rim gives quicker ignition and a higher range of temperature and better overall efficiency than ceramic. This report was based on a comparison between the chromium steel rim and "the old clay refractory vaporizing rim." The report points out, however, that there is a definite advantage to be gained by using the grills; that they are essential in obtaining the

high rim temperatures, and that "they are absolutely essential, if the heavier grades of oil are to be burned with any degree of success." But the grills are shown in Heath. Plaintiff's own service bulletin also recognizes that oils heavier than No. 1 oil should not be burned unless grills are used. In fact all experts, including the inventor himself, state that the advantages of the Powers structure are much more evident if the burner is equipped with grills which stabilize the flame and guide it downward. The gains in reaching higher rates of temperature and burning heavier oils claimed by plaintiff are much more definite if the grills are present, and therefore these particular advantages are shown to result mainly from the use of the grill, which was old in the art.

Carbon deposits are sometimes created in the use of the oil burner, both on the rim and on the electrodes; and the resulting explosions and reduction of combustion efficiency were a serious problem in the early days of the industry. But neither the Shell report nor the testimony shows that these difficulties have been eliminated merely by use of the metal rim. Powers states that the elimination of flashbacking and snaking "is not entirely due to the rim." In fact it clearly appears that the adjustment and installation of the burner are all-important in securing that complete combustion which prevents carbon deposit. At the outset of the oil-burning industry installation and adjustment were so little understood that the oil companies were compelled to establish schools for the distributors of the heaters. The use of metal has advantages not inherent in the use of ceramic; but these advantages result from a nonpatentable improvement.

In view of these considerations, the element of commercial success does not confer patentability. Cover v. Schwartz, 2 Cir., 133 F.2d 541, 543. Plaintiff urges that the defendant has adopted "the familiar expedient of picking out old elements and features from various prior art devices and speculatively combining them," in order to strike down the patents in suit, and that this is not permitted. Cf. Williams Mfg. Co. v. United Shoe Mach. Corporation, 6 Cir., 121 F.2d 273, affirmed, 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537. But this rule does not apply here, since the state of the art at the time of the disclosure was such as to make the combination of each of the three patents obvious.

Cleveland Punch & Shear Works v. E. W. Bliss Co., 6 Cir., 145 F.2d 991, 994.

For the reasons stated, claims 12, 14, 17 and 18 of patent 2,039,607, claims 1, 9 and 16 of patent 2,094,764, and claim 9 of patent 2,107,800, are held invalid for want of patentable invention.

 The accounting ordered against the defendant is the subject of the cross-appeal. The defendant admitted that a license was granted to it to manufacture 200 metal-rim assemblies for oil burners for a specified royalty, that at its request the license was orally extended about June 30, 1937, to include more than 200 assemblies, and that it was terminated as of December 30, 1937. Defendant contends, however, that the license covered only assemblies for oil burners to be manufactured for Kelvinator units. Its vice-president testified that it manufactured for others during the same period, and did not pay any royalty on such assemblies. The terms of the written license are unambiguous. While it is limited in number, it is not limited in any other respect. Under the record the District Court did not err in ordering an accounting to cover the units manufactured and not paid for during the period from May 4, 1937, to December 30, 1937. As to this and all other features of the case, the decree is affirmed.