## GOODWIN et al. v. BORG-WARNER CORPORATION et al.

No. 10119.

Circuit Court of Appeals, Sixth Circuit.
July 1, 1946.

Rehearing Denied Sept. 23, 1946.

As Amended on Denial of Second Petition for Rehearing Oct. 21, 1946.

Writ of Certiorari Denied Jan. 6, 1947.
See 67 S.Ct. 491.

268

Raymond L. Greist, of Chicago, Ill. (Clarence B. Des Jardins, of Cincinnati, Ohio, on the brief), for appellants.

Max Zabel, of Chicago, Ill. (Truman A. Herron, of Cincinnati, Ohio, and Edward C. Gritzbaugh, and Francis W. Test, both of Chicago, Ill., of counsel), for appellees.

Before SIMONS, ALLEN and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

This suit was instituted under § 4915, R. S., 35 U.S.C. § 63, 35 U.S.C.A. § 63, praying that the decision of the Board of Interference Examiners of the United States Patent Office in an interference proceeding between appellant Daukus and appellee Gamble be set aside and priority awarded to Gamble. A patent was thereafter issued to Daukus on his application, in accordance with the decision of the Board of Interference Examiners, and the appellees, Gamble and his assignee, Borg-Warner Corporation (hereinafter called Borg-Warner), filed a supplemental petition for declaratory judgment, praying that Daukus patent, 2,324,913, be declared invalid. The appellants (Daukus and his assignee, Goodwin) in a counter-claim prayed that the patent be held valid and infringed. The District Court found the patent invalid and dismissed the counter-claim. From its judgment this appeal is prosecuted.

The principal question is the validity of the patent, which relates to a clutch plate used in single-plate clutches for motor vehicles. The clutch plate is mounted on the forward end of the transmission drive and is used as the driving element in a friction clutch. The device involved herein consists of three basic concentric elements: A central hub designed to be carried on the driven shaft of the clutch, an intermediate annular disc mounted on the hub, and a series of arcuate cushions attached to and extending beyond the intermediate disc to support a pair of friction facings. The claimed invention in the form of the so-called Borglite plate, manufactured by Borg-Warner, has largely superseded the two principal forms of clutch plates theretofore manufactured by Borg-Warner, the integral cushion type and the compound cushion type. As described by appellees' experts, the integral cushion type of clutch plate is a construction in which the disc member is provided with integral portions which extend out between the facings to constitute the cushioning means, while the compound cushion type is a construction in which the disc member is practically coextensive with the facings and is provided on one of the sides of the outer portion of the

disc with separately formed cushion springs. It is conceded that each of these former types presented serious problems, arising either from the creation of excessive spinning inertia or of chatter, which is the vibration of the driveline and associated parts often observed by the driver when engaging the clutch to start a car.

In order to transmit the torque imposed by the load, the diameter of the plate in the early forms of clutch plate was made large, and the weight at the periphery of the plate developed spinning momentum or inertia which had to be overcome to bring the speed of the shaft up or down to that of the transmission shaft. Unless the spinning inertia is kept low, clashing of the gears will result as the clutch is shifted. It has long been understood in the art that spinning inertia could be reduced and quick shifting of the gears permitted by lightening the weight of the peripheral portion of the sheet metal disc; but when this was done a satisfactory cushioning action was still required, or chatter would result.

Borg-Warner, which is the principal manufacturer of clutch plates, was the assignee of patents under which millions of the so-called integral cushion type of clutch plates were sold. In this type of plate the problem of spinning inertia was largely solved, but chatter was produced upon engagement of the clutch. The integral type cushion plate lacked, as Borg-Warner's expert said, most desirable cushion characteristics, and many complaints were made of chatter in cars using this type of clutch plate. Borg-Warner then developed and manufactured in great numbers the compound cushion plate which, as its experts state, took care of the lack of cushion characteristics; but in this plate desirable shifting characteristics were lacking, and there were complaints of excessive spin. After the Borglite plate, which appellees' experts admit embodies the disclosure of Daukus, was manufactured and adopted by Borg-Warner's customers, there was a marked reduction in the complaints as to both of these defects, and Borglite has to large extent superseded both the integral and compound cushion type of clutch plate.

Daukus claimed to have solved the problem by eliminating the periphery of the full diameter of the disc, using instead a disc of considerably smaller diameter than the facings and securing to the outer edge of the disc a number of separate circumferentially waved spring members less thick than the disc. The spring members were waved in order to permit free compression, and were provided with reduced neck portions attached to the periphery of the mounting disc. By dispensing with the disc of large diameter and using spring members of less thickness than the disc of smaller diameter, the peripheral weight of the clutch plate was lowered with a consequent reduction in spinning momentum or inertia. In addition, the spring members, being separate and individually attached, operated so as to flex freely in action, thus giving the necessary cushioning operation to reduce chatter.

The Board of Interference Examiners held that Daukus conceived this idea in 1935. He tested it out, however, for several years by using it in various cars, a Cadillac owned by a third party, a truck and a Dodge owned by himself, and did not file his application until August, 1938. Gamble claimed to have invented the same device, and his application was filed in June, 1937. Interference proceedings were declared in January, 1940, with Daukus, who had filed his application after Gamble, carrying the burden of proof. Beidler v. Caps, 36 F.2d 122, 17 C.C.P.A. (Patents) 703; Cooper v. Hubbell, 53 F.2d 1072, 19 C.C.P.A.(Patents) 790; Raymond v. Wickersham, 110 F.2d 863, 27 C.C.P.A.(Patents) 1079.

The claims involved in the interference had all been allowed by the examiners, but were later reformed by motions to amend and dissolve. The Board of Interference Examiners awarded priority of invention to Daukus on all counts, finding that he had reduced the invention to practice in 1935. Appellees petitioned the Commissioner of Patents to withhold the patent, but the petition was denied and Daukus, 2,324,913, finally issued.

In the interference proceedings the appellees stated that the invention "represents one of the most important improvements in the clutch art since the time when the single plate clutch displaced the multiple disc clutch."

The District Court made no finding on the question of infringement. The appellees do not seriously deny infringement, and at the interference proceedings appellees' counsel stated that "clutch plates embodying the invention, sold under the trademark 'Borglite,' * * * have met with such favorable acceptance by the trade that older types of plates have been almost completely supplanted by the 'Borglite' type." In their brief in this court the appellees state in effect that the Daukus patent is "in its only novel aspects" identical with the Borglite plate. The Board of Interference Examiners found the invention to be that of Daukus. This finding is supported by substantial evidence on this point, including the statement of two disinterested garage operators who positively identify the principal Daukus plate in evidence as having been removed, refaced and tested at their garage in 1935. We sustain this finding, and for the purposes of this case we consider that the invention was reduced to practice by Daukus in 1935. The Daukus plate, used experimentally by the inventor, in its substantial features is the same as the Borglite plate, and infringement exists if the patent is valid.

It is uncontradicted that the Borglite plate has met with immediate and very substantial commercial success. It is used by the eight important automobile manufacturers for which Borg-Warner makes clutch plates, and by various truck manufacturers. Its utility was conceded by the expert for the appellees.

Nine claims are in issue, of which six are claimed by appellants to have been drafted for the purpose of covering the Borglite plate. This assertion is not denied, and it is supported by the fact that in a motion made by Gamble, it was proposed that five counts be included in the interference proceedings. Each of these five counts bore the heading "Daukus Claim No. ——— revised," and two of these counts were allowed. They are found in the patent as claims 14 and 17. Claim 13 is representative, and reads as follows:

"A friction clutch element comprising a hub, a relatively sturdy mounting member mounted thereon and projecting radially therefrom, a plurality of structurally independent yieldable cushions having a substantially lesser weight per unit area than that of said mounting member, occupying an annular region lying beyond the outer radial limit of said mounting member and each having an integral reduced neck portion securely attached to said mounting member, and axially spaced friction facings carried by said cushions, said cushions being disposed between and in yielding engagement with said facings and being permanently deformed axially so as to normally maintain said facings in spaced parallel relationship and to allow compression thereof under packing pressure."

We think that the invention is clearly patentable. The District Court relied upon the existence of the Ahlene so-called public use in its holding of invalidity, stating that "Assuming that it could be said that the discovery that making the 'L-shaped' cushion members of lighter material would reduce the spinning inertia of the plate constituted patentable invention, the invention was not made by Daukus. Clutch plates embodying this concept were in use and on sale prior to 1930. The evidence of this prior use was not before the Patent Office. Apparently the combined efforts of counsel for Daukus and Gamble convinced the Patent Office that the first examiner was in error when he rejected all the claims of the Daukus application. * * * However, the record in this case proves beyond a reasonable doubt that it had been a common practice more than two years prior to the alleged invention to make the cushion elements of steel and thinner than the intermediate member. There was no patentable invention disclosed in either the Daukus or Gamble application."

This finding miscomprehends the purpose and the gist of the claimed invention. It has never been asserted that Daukus conceived the idea of making cushion

members of lighter materials, in order to reduce the spinning inertia of the plate. As shown in Kraker, 283,493, the principle of lightening the peripheral weight of the clutch plate in order to reduce spinning momentum had been understood in the art since 1883. While Daukus disclosed cushion elements thinner than the intermediate member or disc, this was only one element of the combination. He also substantially reduced the diameter of the intermediate member, making the cushion members project beyond it, thus lightening the weight at the peripheral region of the mounting disc and reducing spinning inertia. This element, specifically described in the claims in issue, is new and was repeatedly emphasized by appellees' attorneys at the interference proceedings as constituting an important feature of the invention. In its brief in the interference proceedings, Borg-Warner's attorney stated: "The relatively high spinning inertia of these plates was derived in large part from the peripheral region of the heavy sheet metal mounting disc which was always, until the Gamble invention, extended between the facings to the full diameter of the clutch plates," and also points out that "the practice of extending the mounting disc to the full diameter of the plate" was continued after the use of thin-waved spring sheet metal cushions was inaugurated in the compound plate. It was not until several years later, appellees claimed in the brief, that "the party Gamble conceived of the possibility of completely eliminating the peripheral region of the mounting disc, and employing extremely thin, light-weight cushion members. * * *" Appellees declared that while the problem had been well recognized for several years, no one before Gamble had conceived of the possibility of employing the light-weight cushions and "a mounting disc of heavy sheet metal terminated substantially within the inner periphery of the facings." Gamble's specification in his patent application points out that the major advantage attained by the clutch plate herein described is the presentation of low spinning inertia, "since the mass of the relatively thin steel cushions is considerably less than would be the mass of the disc were it extended to the outer periphery of the plate. * * *" He also calls attention in his specification to the objectionable feature of prior art plates as being that "the relatively heavy metal of the clutch disc extended to the outer periphery of the finished plate possess what I choose to call relatively high 'spinning inertia.'" Gamble's specification and drawings show that he considers that his invention resides in the "elimination of the peripheral region" of the heavy mounting disc as well as in the provision of the light-weight cushion members.

The appraisal by an inventor of the scope of his invention is significant. Wood v. Peerless Motor Car Co., 6 Cir., 75 F.2d 554, 555; Timken Detroit Axle Co. v. Cleveland Steel Products Corp., 6 Cir., 148 F.2d 267, 270. The statement by Borg-Warner of the scope of the invention which it hoped to make its own in the event that Gamble, its assignor, vice-president and general manager of the Borg-Beck Division of Borg-Warner, should receive the award of priority, is peculiarly significant. Borg-Warner is the largest manufacturer of clutch plates in the world, and its patent experts and skilled engineers could hardly have misunderstood the importance of the device which they claimed to be their invention. The circumstance that Daukus did not reduce spinning inertia to the degree shown by Borglite is immaterial. For the first time he secured the desired result of eliminating both spinning inertia and chatter by reducing the diameter of the mounting disc, employing thin cushions, and uniting desirable cushion characteristics in a new structural combination. Appellees' experts stated under oath that this was not achieved under any prior patent. Moreover, this invention had new and highly advantageous practical features. Daukus conceived of the possibility of forming his cushion spring members in a series of individually formed and attached parts, with the neck portions reduced in such manner as to allow complete flexibility in action. Since the cushioning members are individually independent, they can each be identically cut and waved in quantity produc-

tion, and also can be cut from sheet metal with the grain of the metal running in the same direction. These circumstances have important commercial advantages not before present in any clutch plate.

While Ahlene, 1,727,153, and Reed, 1,889,698, were not before the Patent Office, and while great numbers of clutch plates were manufactured under these patents prior to 1935, the type of construction there disclosed was thoroughly considered by the examiner. Nutt, Borg-Warner's director of engineering since 1930, who took an active part in the interference proceedings, stated in the trial of this case that both Ahlene and Reed, 1,889,698, disclose the integral type clutch plate. Reed, 1,837,173, which also discloses the integral type, was cited in the Patent Office.

All of the appellees' experts at the interference proceedings gave testimony supporting the general proposition that the integral cushion type was sharply differentiated from and much less successful than the Borglite or Daukus type. The public use which invalidates an invention under § 31, 35 U.S.C., 35 U.S.C.A. § 31, is a public use of the very invention patented. American Hide & Leather Splitting & Dressing Mach. Co. v. American Tool & Mach. Co., C.C.Mass., 1 Fed.Cas. p. 647, No. 302; Draper v. Wattles, C. C. Mass., 7 Fed.Cas. p. 1061, No. 4073. Cf. Andrews v. Hovey, 124 U.S. 694, 712, 8 S.Ct. 676, 31 L.Ed. 557; Campbell v. Mayor of New York, C.C.N.Y., 47 F. 515. Since the integral type clutch plate is not the Daukus invention, the volume of exhibits and the testimony concerning the alleged prior public use of Ahlene and Reed, 1,889,698, do not affect the patentability of Daukus.

The intervention herein of the defense of public use in the guise of the sale of great quantities of clutch plates of the integral cushion type manufactured in accordance with Ahlene and Reed, 1,889,-698, is also significant. It is stated that this defense could not be interposed in the interference proceedings because it involves a public use. This contention, as pointed out above, has no merit, because

the use under Ahlene was not of the invention in controversy. Moreover, Ahlene and Reed, 1,889,698, were pertinent as prior art and could have been availed of on motion to dissolve the interference; but they were never mentioned in these proceedings. This was not due to any lack of information on appellees' part, for the applications for Ahlene and Reed, 1,837,173 and 1,889,698, were made through the same patent attorney who handled other Borg-Warner patents, and the applications were assigned to Borg-Warner. It is not without significance that the opening sentences in Ahlene and Reed, 1,837,173, which was cited in the Patent Office, are almost identical. In the interference proceedings Borg-Warner was the real party in interest, but it never contended that Ahlene or Reed presented any features anticipatory of nor substantially the same as Daukus. In fact Borg-Warner's experts made positive statements in the interference proceedings to the effect that the Daukus-Gamble disclosure constituted a "radical advance" over the integral cushion type. The contention was made for the first time in the District Court not only that manufacture under Ahlene and Reed, 1,889,698, constituted a public use, but also that Ahlene and Reed were prior art invalidating Daukus. This contention clearly is an afterthought and has no merit.

Upon a consideration of the entire record, we think that substantially the same construction covered by Ahlene and Reed, 1,889,698, was before the Patent Office and was thoroughly considered at the time priority was awarded to Daukus. Cf. Modern Products Co. v. Drachenberg, 6 Cir., 152 F.2d 203.

The following statement, made in the interference proceedings by appellees' patent attorneys, is a convincing argument for the appellants here:

"In dealing with the problem of what is commonly known by clutch manufacturers as 'spinning inertia,' Applicant has made what is firmly believed one of the most important inventions that have been developed in the clutch art in years. As pointed out in the statement of the objects of the invention, spinning inertia has always been a

problem in connection with gear shifting. * * *

"The problem becomes even more vital in connection with the development of automatic transmissions in which the intervention of the operator in allowing the clutch to remain disengaged until there is relayed to his fingers through the shifting levers, the message that the gears have synchronized, is being done away with. * * *

"A notable feature of the invention is that in spite of the fact that rotational inertia of the disc has been substantially cut in half, the torque-resisting strength of the disc as a whole has not been sacrificed *at all*. Where the torque strain is concentrated, i. e., in the central region of the disc, the material has the same thickness as before, and consequently, has exactly the same amount of torque-resisting strength. On the other hand, where the torque strain is widely distributed, it is found that the necessary torsional strength is present in the much lighter cushion members, and that even the reduced neck regions shown, are adequate in view of the relatively short radial distance that they are required to bridge.

"Applicant has achieved these radically advantageous results by providing a clutch driven member having a relatively thick, rigid mounting disc projected radially outward to within a short distance of the inner peripheries of the friction facings, providing ample sturdiness of assembly and torque-transmitting strength, but terminating short of the formerly high inertia outer region of the assembly, and extending relatively lightweight, low inertia cushion members into this formerly high inertia region for the purpose of supporting the facings.

"It is submitted that in view of the many years during which the problem of reducing the 'spinning inertia' of the transmission shaft assembly has been a recognized one, that the fact that this remarkable result could be achieved in the manner in which Applicant has achieved it, has been far from an obvious one."

Appellants' contention that the device is patentable is strongly supported by its practical history. Engineers and patent experts had been working for years to solve the problem of eliminating both spinning inertia and chatter. After hotly contested proceedings in which the finest intellect in the clutch-plate art was massed on the side of Borg-Warner, and validity of various claims was thoroughly probed, claims framed by appellees' attorneys were approved, but priority was awarded to Daukus. The rapid and widespread acceptance of his device is evidence to be considered on the question of invention. All of the elements present in the case of Williams Mfg. Co. v. United Shoe Machinery Corp., 6 Cir., 121 F.2d 273, affirmed 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 483, are present here, and Goodyear Tire & Rubber Co., Inc. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721, is on all fours with the principles involved. The presumption of validity was strengthened by the long-continued proceedings in the Patent Office, in which the prior art had already been considered and in which the question of patentability of the issue had been actively contested. General Electric Co. v. Jewel Incandescent Lamp Co., 66 S.Ct. 81; Hildreth v. Mastoras, 257 U.S. 27, 42 S.Ct. 20, 66 L.Ed. 112; Modern Products Supply Co. v. Drachenberg, supra.

Nor is the patent invalidated by any public use on the part of Daukus prior to the two-year period before his application. This claim is asserted because of Daukus' testimony that the Cadillac car owned by a friend of his in which Daukus says he inserted his first clutch plate was later sold with the plate in it. The plate, so far as this record shows, was never used for a profit, nor was it within the terms of the statute put "on sale." 35 U.S.C. § 31, 35 U.S.C.A. § 31. It was placed in the Cadillac purely for experimental purposes, and this record does not show that it was sold with Daukus' knowledge or consent. This neither constitutes a public use nor sale within the statute. Elizabeth v. Pavement Co., 97 U.S. 126, 135, 24 L.Ed. 1000. As stated therein, even if profit is derived from the sale of a device under similar circumstances and the profit is merely incidental to the experimental use, the character of the use is not changed. But here there

274

was no profit, and the use was entirely for the purpose of testing. To the same effect are Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 255, 8 S.Ct. 122, 31 L.Ed. 141; Jenner v. Bowen, 6 Cir., 139 F. 556, 559, 560; Austin Machinery Co. v. Buckeye Traction Ditcher Co., 6 Cir., 13 F.2d 697; Reo Motor Car Co. v. Gear Grinding Machine Co., 6 Cir., 42 F.2d 965, 968.

■ We conclude that the patent is valid.

■ The District Court correctly held that the feature of the use in commercial manufacture of clock spring metal, now asserted by Borg-Warner to be the one novel feature in Gamble, is not patentable. The use of "clock spring metal" is not mentioned in Gamble's claims or specification, the term employed being "spring metal" or "yieldable metal"; but in any case, as appellees' expert conceded in the interference proceedings, the substitution of one material for another does not constitute invention. The substitution of one well-known material for another will not alone support a patent. Kemper-Thomas Co. v. J. P. Gordon Co., 6 Cir., 67 F.2d 478; Timken Detroit Axle Co. v. Cleveland Steel Products Co., supra.

The decree is reversed and the case is remanded for an accounting and for further proceedings in accordance with this opinion.

### On Application for Rehearing.

■ In their petition for rehearing, the appellees' principal contention is that Daukus Patent No. 1,777,399 anticipates and invalidates the patent in suit, Daukus Patent No. 2,324,913. In the District Court the appellees evidently considered this a very minor point, for while the Daukus Patent No. 1,777,399 was included in a group of some thirty patents introduced in evidence and claimed to anticipate, no specific mention of this particular patent appears in the transcript of the testimony. The District Court made no finding upon this point. The only expert discussion of it to be found in the evidence appears in the proceedings in the Patent Office. The Examiner gave unusually extended consideration to Daukus Patent No. 1,777,399 before allowing the claims in suit. Objections made before the Board of Interference Examiners based upon the earlier Daukus Patent were overruled. In view of the absence of testimony supporting appellees' contention that Daukus Patent No. 1,777,399 invalidates Daukus Patent No. 2,324,913, the conclusions of the expert tribunals should not lightly be set aside.

■ We think the record shows that the conclusion of the Patent Office was correct. The purpose of the earlier Daukus Patent was to prevent chatter which Daukus considered was caused by the complete rigidity of the clutch. He hoped to solve this problem by making the clutch plate slightly yieldable when first applied to the driving member. He conceived and disclosed a structure in which a circular plate should be formed with a series of openings "closely spaced in order to form narrow arms" which would be capable of yielding during the initial engagement between the clutch member and the flywheel. He also provided for slots cut through the rim around the edge of the clutch plate, which he considered further facilitated the yieldability. As pointed out in the interference proceedings by appellees' attorney, Daukus thus sought to secure flexibility by decreasing circumferential strength instead of by decreasing thickness, as in the patent in suit. The patent is in no way addressed to the problem of reducing spinning inertia and discloses, as stated by appellees' attorney, no "mechanism for dealing with the problem." On the contrary, the problem successfully dealt with in the patent in suit as set forth in our opinion is the elimination not only of chatter but also of spinning inertia. The petition for rehearing is denied.