## GREAT ATLANTIC & PACIFIC TEA CO. v. SUPERMARKET EQUIPMENT CORPORATION.

### No. 10835.

United States Court of Appeals
Sixth Circuit.

Jan. 17, 1950.

As Amended Feb. 10, 1950.

John H. Glaccum, New York City, E. J. Balluff, Detroit, Mich., Munn, Liddy & Glaccum, New York City, on brief, for appellant.

Townsend F. Beaman, Jackson, Mich., Beaman & Patch, Jackson, Mich., on brief, Theodore Greve, Cincinnati, Ohio, on docket, for appellee.

Before ALLEN, MARTIN and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This appeal arises out of a judgment of the District Court finding three claims of Turnham patent 2,242,408, issued May 20, 1941, on an application filed October 28, 1938, valid and infringed. Weingarten, plaintiff below, is assignee of the patent in which Bradley, co-plaintiff below, owned a nominal interest.

At the trial it was stipulated that Claims 4, 5 and 6, if valid, were infringed by appellant's structure. Appellees then withdrew Claims 1, 2 and 3, and hence Claims 4, 5 and 6, printed in the margin, are in issue.[1]

4. A checker's stand including a counter of the character described, an open bottom pusher frame thereon, means to guide said frame in sliding movement so that goods placed on the end of said counter within said frame may be pushed along the counter in a group to a position adjacent the checker by movement of said frame.

5. A cashier's counter for cash and carry type of grocery comprising a portion spaced from the cashier's stand

The Turnham patent covers a merchandise handler, designed to expedite the passage of customers through checking-out counters in self-serve stores. The problem sought to be solved arose out of the institution of self-serve grocery stores, the first of which was the Piggly-Wiggly, established about 1917. The problem has been increased by the opening of the so-called super markets around 1937, which for the purpose of this case are large self-serve stores handling a great volume of business. As described in the patent specifications and in the evidence, in self-serve grocery stores the customer deposited purchases in a basket and placed the basket by the cash register on the checking counter. This was an L-shaped table, with the register mounted upon the L or wing. The checker took the groceries out of the basket, sorted them, added up the amounts, and received payment. In 1937 at the Weingarten stores in Houston, Texas, the problem which had existed for several years was intensified, particularly during rush hours, when a number of persons approached the checking counter at the same time. The irritation of the customers at having to wait in line, combined with the difficulty of handling the customers, created a situation which was a real menace to the development of the self-serve store. Turnham, an employee of Weingarten, who was assigned the task of solving the problem, invented the device which is the subject of controversy. He put an extension on the checking counter and to this extension he attached a guide structure. He used with the guide structure a three-sided bottomless frame or rack, to be slid back and forth upon the counter. The customer placed groceries in the frame, and a "pusher boy" pushed the frame forward to the checker. The frame was then pushed back to the point where the next customer was waiting, and his groceries in turn were put into the frame and pushed forward. Later, customers became educated to put their packages into the frame and push them forward themselves. A marked advantage of this system is that while the checker is waiting on one customer, the next in line has an opportunity to load packages into the frame and thus expedite the service. Under tests which are not controverted in this record it was shown that the stores which use this device have handled 30% more customers, taken in 30% more money than formerly, and thus greatly improved their efficiency.

While the problem arises in marked form in the super markets and is, as one of appellant's witnesses said, one of their biggest problems, it existed as soon as self-serve stores with checking counters were opened in 1917. Whenever more than two persons are at the checking counter, the difficulty exists. The congestion is conceded to have been a problem always on Saturdays and at rush hours. Prior to Turnham, in spite of repeated attempts, the only solution was the addition of checking counters. This in turn meant the use of very valuable space near the front of the store, building of additional counters, hiring of additional help, which was particularly difficult during the man-power shortage of the war years, and the purchase of additional cash registers. Since 1939 devices similar to Turn-

and upon which the merchandise may be deposited and arranged, a bottomless three sided frame on said portion and within which the merchandise is deposited and arranged, means whereby said frame is movable on said counter from said portion to a position adjacent the cashier's stand so that the merchandise may thus be moved as a group to a point where it may be conveniently observed, counted and registered by the cashier.

6. A cashier's counter for cash and carry type of grocery comprising a portion spaced from the cashier's stand and upon which the merchandise may be deposited and arranged, a bottomless frame on said portion and within which the merchandise is deposited and arranged, means whereby said frame is movable on said counter from said portion to a position adjacent the cashier's stand so that the merchandise may thus be moved as a group to a point where it may be conveniently observed, counted and registered by the cashier, said frame being open at the end adjacent the cashier's stand and readily movable to be returned over said portion so as to receive the merchandise of another customer while the cashier is occupied with the previous group.

ham have been put into self-serve markets established by the leading grocery chains and in 1942 appellant installed them in various stores. .

The District Court found.

"15. Claims 4, 5 and 6 of the patent in suit define a new combination of elements brought together for the first time by Turnham to provide an improved check-out counter.

"16. Three-sided bottomless racks or trays had been used in racking pool balls prior to the Turnham invention. Also checking-out counters were known. Moreover, guide rails for trays had been used in self-serve restaurants.

"However, the conception of a counter with an extension to receive a bottomless self-unloading tray with which to push the contents of the tray in front of the cashier was a decidedly novel feature and constitutes a new and useful combination."

"17. There is no similarity between the prior art patents cited by the Patent Office or the defendant and the invention disclosed in the Turnham patent."

"18. No evidence was introduced establishing that anyone prior to Turnham used a three-sided bottomless tray in combination with a checking-out counter."

Appellant's witnesses conceded the utility of the Turnham patent, one of them stating that it is obvious that this pusher has improved the efficiency and speed of taking care of the lines of customers. Appellant, however, while conceding infringement, contends that the conception of Turnham involved mere mechanical skill and does not rise to the dignity of invention.

 We think the judgment of the District Court must be affirmed. The finding that this new and useful combination resulted from the exercise of the inventive faculty is a finding of fact [Faulkner v. Gibbs, 9 Cir., 170 F.2d 34, affirmed by the Supreme Court, November 7, 1949, 70 S. Ct. 25; Williams Mfg. Co. v. United Shoe Machinery Corp., 316 U.S. 364, 367, 62 S. Ct. 1179, 86 L.Ed. 1537], is sustained by substantial evidence, and should not be set aside unless clearly erroneous. General Metals Powder Co. v. S. K. Wellman Co., 6 Cir., 157 F.2d 505, 509. While appellant contends that Turnham settled no long-standing problem because there was no acute bottleneck at the checking counters until 1937, this contention is answered by the testimony not only of appellees', but of its own witnesses. It appears by the overwhelming weight of the evidence that at rush hours and on rush days, such as Saturday, the problem appeared as soon as self-service in grocery stores was instituted. The device satisfied an old and recognized want, and hence "invention is to be inferred, rather than the exercise of mechanical skill. For mere skill of the art would normally have been called into action by the generally known want." Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 474, 55 S.Ct. 449, 454, 79 L.Ed. 997; Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 64 S. Ct. 593, 88 L.Ed. 721. One could be blinded in this case by the simplicity of the device, and might conclude that it does not present the degree of higher intelligence held by the courts necessary to constitute invention. But here a long-existing problem, born with the birth of the self-serve store in 1917 and continually troubling store managements, was never solved until 1937, when Turnham placed his combination in Weingarten's Houston store. Three witnesses testified to the existence of the problem from the beginning of self-service and to the efforts constantly made to solve it. Appellant at once recognized the problem when it opened its self-serve stores in the Midwest. Employees of the Kroger Company from 1939 on worked with numerous devices, such as a conveyor belt which proved impractical, and a counter dolly or wheeled rack which was devised to carry the packages to the cashier. But it was not feasible to get rid of this rack and return it to the customer. About 1941 Kroger adopted the three-sided bottomless tray, which up to this time leads in efficiency of merchandise handling, for with a mere push it is returned to the next customer waiting in line, and the process goes on. The Milgram stores, which established self-service in Kansas City in 1932, found

the problem acute at that time. In 1939 Milgram set up a number of counter devices which had extensions and guard rails upon which customers slid their baskets in front of the cashier and then lifted them up on the counter for unloading and counting. The combination disclosed here, which under this record no one conceived of before Turnham, eliminated the lifting of heavy baskets and reduced other difficulties inherent in the congested lines leading to the checking counters. Since 1939 practically every major self-serve store in the United States has adopted the Turnham system. It is true that the extended counter was old and the guide rails had no novelty. A bottomless rack had been used to retain billiard balls in formation. But the use of all these elements in the combination disclosed by Turnham was new and produced a new and highly beneficial result. While no sales of the device were made and the first license issued was subsequent to the date of the filing of this action, the industry paid its tribute to the importance of Turnham by virtually unanimous adoption. Cf. Forestek Plating & Mfg. Co. v. Knapp-Monarch Co., 6 Cir., 106 F.2d 554, 558; Goodwin v. Borg-Warner Corp., 6 Cir., 157 F.2d 267. This was in the face of the fact that no sales or extensive advertising campaign was undertaken.

■ Seventeen patents which had not been cited by the Patent Office during the prosecution of the Turnham application were introduced as evidence of anticipation of the Turnham device. It is not necessary to discuss these in detail. For the most part they are in totally nonanalogous art. Marois, 1,654,692, is a flat slab movable back and forth under a screen protecting a cashier's window. Varnum, 1,-725,494, and Dickinson, 1,115,911, are patents for pool ball racks. The racks in question are closed and are not self-unloading, as is the U-shaped rack. Neither Arnold, 1,708,407, Rorrer, 1,873,852, nor Greenberg, 1,384,191, has the bottomless rack. Anderson, 1,788,759, is an ordinary belt type of conveyor. As shown in this record, no patent in the prior art attacked the bottleneck presented at the checkout counter in the self-serve store. Appellant

concedes that no prior use of the bottomless rack in such a combination is shown. We conclude that substantial evidence supports the findings of the District Court that novelty and invention exist.

Claims 4, 5 and 6 describe the Turnham device in terms of its essential physical structure. The rule announced in Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3, does not invalidate these claims. Cf. Excel Auto Radiator Co. v. Bishop & Babcock Mfg. Co., 6 Cir., 167 F.2d 962, 966; Faulkner v. Gibbs, supra. Claims 4, 5 and 6 are valid.

■ The District Court did not err in refusing to pass upon the validity of Claims 1, 2 and 3. It was discretionary with the court whether it should permit the plaintiffs to withdraw these claims and treat their action as an amendment to the pleadings. Ford Motor Co. v. Gordon Form Lathe Co., 6 Cir., 90 F.2d 999. Since the District Court did not err in permitting the withdrawal of these claims it also did not err in its allowance of costs. Claims 1, 2 and 3 not having been found invalid, plaintiffs were under no duty to disclaim them, and R.S. § 4922, 35 U.S.C., § 71, 35 U.S.C.A. § 71, does not apply.

The judgment is affirmed.

MARTIN, Circuit Judge (dissenting).

I am unable to find invention in the patent claims in suit. It seems to me that the combination of the admittedly old elements as described in the claims does not rise to the dignity of invention, and that the findings of fact of the district court are clearly erroneous. Quite apparently Turnham derived the idea underlying his patent from a different field by utilizing a commonly known and long existent art, that of racking pool balls upon a pool table. In effect, he merely opened up the apex of an ordinary pool ball rack so that the legs of the triangle became parallel to each other and perpendicular to the base. The opened rack was then hand-pushed along an elongated table. The pushing element was not automatic, or even mechanical.

The result achieved by this simple method undoubtedly was utilitarian when ap-

plied to self-serve grocery stores, for merchandise could be pushed along faster and the purchaser better served. But that, to my thinking, does not constitute Turnham's combination of old elements inventive to the degree that a patent monopoly should be granted him.

In Williams Mfg. Co. v. United Shoe Mach. Corporation, 6 Cir., 121 F.2d 273 [affirmed by the Supreme Court, 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537], in which this dissenter concurred, the heel seat laster used in manufacturing shoes was highly complicated and the improvements held valid required more ingenuity to accomplish than the mere work of a mechanic skilled in the art. I think the same may be said of the patent relating to a clutch used in single-plate clutches for motor vehicles held valid in Goodwin v. Borg-Warner Corporation, 6 Cir., 157 F.2d 267, in which the present dissenter concurred in the opinion of Judge Allen.

In Sinclair & Carroll Co. v. Interchemical Corporation, 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644, the Supreme Court, in holding a patent invalid, said: "A long line of cases had held it to be an essential requirement for the validity of a patent that the subject-matter display 'invention', 'more ingenuity * * * than the work of a mechanic skilled in the art.' [Citing cases.]"

Earlier, in Cuno Engineering Corp. v. Automatic Devices Corporation, 314 U.S. 84, 90, 62 S.Ct. 37, 40, 86 L.Ed. 58, the highest court stated: "We may concede that the functions performed by Mead's combination were new and useful. But that does not necessarily make the device patentable. Under the statute, 35 U.S.C., § 31, 35 U.S.C.A. § 31, R.S. § 4886, the device must not only be 'new and useful', it must also be an 'invention' or 'discovery'. Thompson v. Boisselier, 114 U.S. 1, 11, 5 S.Ct. 1042, 1047, 29 L.Ed. 76. Since Hotchkiss v. Greenwood & Co., 11 How. 248, 267, 13 L.Ed. 683, decided in 1851, it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art. [Citing cases.]" This court has said

that not every improvement necessarily denotes invention and "the adoption of a well-known mechanical expedient is within the expected skill of the art." Shaler Co. v. Rite-Way Products, 6 Cir., 107 F.2d 82, 83.

In the old case of Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 231, 27 L.Ed. 438, Mr. Justice Bradley declared for the unanimous Supreme Court that to "grant to a single party a monopoly of every slight advance made, except where the exercise of invention, somewhat above ordinary mechanical or engineering skill, is distinctly shown, is unjust in principle and injurious in its consequences."

Applying these principles, I am unable to see that invention inheres in the patent claims in suit. Accordingly, I think that the judgment of the district court, being grounded upon clearly erroneous findings, should be reversed.