**CANADIAN INGERSOLL–RAND COMPANY, Ltd., Rand Development Corporation and Ingersoll-Rand World Trade Limited, Appellants,**

**v.**

**PETERSON PRODUCTS OF SAN MATEO, INC., a corporation also known as Peterson Spray Gun Co., Inc., a corporation, Appellee.**

No. 19266.

United States Court of Appeals
Ninth Circuit.

June 29, 1965.

Rehearing Denied Aug. 10, 1965.

C. Blake Townsend, Robert E. Kosinski, Carroll G. Harper, Byerly, Townsend, Watson & Churchill, New York City, for appellants.

Charles E. Townsend, Anthony B. Die-penbrock, Stephen S. Townsend, Town-

send & Townsend, San Francisco, Cal., for appellee.

Before MADDEN, Judge of the Court of Claims, and HAMLEY and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge.

In this patent infringement suit the district court entered judgment for defendant, determining that the two patents sued upon are invalid and, in any event, not infringed. The opinion of the district court leading to entry of this judgment is reported in 223 F.Supp. 803.

Plaintiffs appealed from that judgment. They thereafter moved in the district court, under Rule 60(b), Federal Rules of Civil Procedure, for a new trial on the ground of newly-discovered evidence pertaining to the asserted prior art patent of Richard C. Bradley (United States Patent No. 3,123,307). At the same time plaintiffs moved in the district court for an order indicating that it would entertain the motion for a new trial, if this court shall remand the case for that purpose. The latter motion was denied upon initial consideration, and again upon rehearing, and plaintiffs appealed from both of those orders.

These three consolidated appeals are now before us.[1] The patents in suit are also involved in litigation elsewhere. On May 24, 1963, the United States District Court, Southern District of Florida, Miami Division, held the patents to be valid and infringed. Ibis Enterprises, Ltd. v. Spray-Bilt, Inc., 220 F.Supp. 65, now pending on appeal in the Fifth Circuit. A similar suit in Arkansas has not yet been tried, according to the latest advice received by this court.

One of the patents here sued upon is No. 2,933,125—"Method Of And Portable Apparatus For Depositing Reinforced Plastic" (main or '125 patent). David F. Anderson, the asserted inventor, applied for that patent on August 6, 1953,

the date of the claimed invention being July, 1952. The patent was not issued until April 19, 1960. It contains six claims all relating to the method of forming reinforced plastic articles by cutting fibers, spraying the cut fibers with an atomized plastic in a fluid state and depositing the fibers on a mold to form a fiber reinforced plastic article, and to a hand-held machine for carrying out the method.

The other patent sued upon is No. 2,787,314—"Apparatus And Method For Forming A Fiber Reinforced Plastic Article" (improvement or '314 patent). Anderson applied for it on October 13, 1954. It was issued on April 2, 1957, which was three years prior to issuance of the main patent. The improvement patent, containing thirteen claims, is for specific improvements upon the apparatus and method of the main patent.

Anderson assigned the patent applications to Ingersoll-Rand Company, Ltd. (Ingersoll-Rand), which thereby became the owner of both patents when issued. That company, in turn, entered into an agreement with Rand Development Corporation (Development), under which the latter became, and still is, exclusive licensee under both patents.

On February 24, 1959, Ingersoll-Rand and Development instituted this action against Peterson Products of San Mateo, Inc., also known as Peterson Spray Gun Co., Inc. (Peterson Products) charging infringement of the improvement patent, the main patent having not yet been issued. Since September, 1958, Peterson Products has been manufacturing, using and selling both a resin spray gun and a fiberglass cutter. When these devices were used conjointly by Peterson Products, or by its customers according to the written instructions of Peterson Products, to manufacture fiberglass reinforced plastics, the combined devices constituted

---

1. The district court also denied a second motion for an order indicating that it would entertain a similar motion for a new trial on the basis of additional newly-discovered evidence made after these

three appeals were taken. An appeal from the latter order is now in process but is not yet under submission in this court.

the accused apparatus and their use the accused method.

Following the issuance of the main patent Ingersoll-Rand assigned all of its interest in the two patents to Ibis Enterprises, Ltd. This company later became Ingersoll-Rand World Trade Ltd. (World Trade), by which name it will be referred to herein. On August 18, 1961, Ingersoll-Rand, Development and World Trade, filed a supplemental complaint against Peterson Products, bringing in issue the infringement of the main patent as well as the improvement patent.[2]

In its answer to the supplemental complaint, Peterson Products denied infringement and advanced several affirmative defenses. Among the defenses asserted were that both of the patents sued upon are invalid for a variety of reasons, and that plaintiffs are guilty of unclean hands and misuse of patent rights.[3] Defendant counterclaimed for a judgment declaring the patents are invalid, unenforceable because of misuse of patent rights and, in any event, not infringed. The trial consumed thirty-one full trial days, including three days of opening statements and about three days of closing arguments.[4]

The district court held both patents invalid for several reasons, as summarized in the margin.[5] In order to obtain a reversal, appellants must convince us that the trial court erred as to each and every ground relied upon by that court in holding the patents invalid and, in addi-

2. In the original complaint, plaintiffs specifically designated and asserted infringement by Peterson Products of claims 8, 11 and 12 of the improvement patent. After issuance of the main patent, plaintiffs withdrew their assertion of infringement of claims 8 and 12 of the improvement patent and asserted infringement by Peterson Products of all six claims of the main patent and claim 11 only of the improvement patent.

3. Defendant did not limit its attack upon the improvement patent to claim 11, which plaintiffs alleged had been infringed, but asserted that the entire patent is invalid.

4. By stipulation and with the consent of the district court, trial of the misuse defense and counterclaim was deferred pending determination of the patent validity and infringement issues. Because the trial court found both patents invalid and, even if valid, not infringed, trial of the misuse issue has not been held.

5. All claims of the main patent (No. 2,-933,125) were held to be invalid for the following reasons:

1. The claims are drawn to an unpatentable aggregation or congregation of old elements or steps which perform no new, unobvious or patentable function.

2. The subject matter as a whole as set forth in the claims would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains.

3. Prior use activities by Utility Trailer Mfg. Co. of Los Angeles, California and by Richard C. Bradley of Ft. Lauderdale, Florida, anticipate all claims.

4. The prior activities of Utility Trailer Mfg. Co. and Richard C. Bradley, conducted in the regular course of business and without any attempt to conceal the activities from outsiders, and involving disclosures without restriction as to confidentiality to outsiders, each constitutes prior invention.

5. Patent No. 2,933,125 constitutes double patenting over the improvement patent, No. 2,787,314.

6. The specification of the patent does not set forth the best mode contemplated by the inventor for carrying out his alleged invention.

7. The specification of the patent does not contain a written description of the alleged invention, and of the manner and process of making and using it in such full, clear, concise and exact terms as to enable any person skilled in the art to make and use the same without the necessity of conducting extensive independent tests and experimentations.

Claims 3, 4 and 6 of the main patent were also held to be invalid for failure of the patentee to file a proper oath of invention.

The entire improvement patent (No. 2,-787,314) was held to be invalid for the reasons set out under 6 and 7 above. Claim 11 of the improvement patent was also held to be invalid for the reason set out under 2, above, and for lack of novelty and as being anticipated by the prior art.

tion, that the trial court erred in holding that the patents have not been infringed.

■■ In our opinion the trial court did not err in finding and concluding that, for each of the first four reasons stated in note 5, the main patent is invalid. Likewise, the trial court did not err in finding and concluding that, for the reasons set out in the last sentence of note 5, claim 11 of the improvement patent is invalid. As stated in note 2, above, this is the only claim of the improvement patent which was assertedly infringed.

As our basis for these determinations we adopt the discussion of these points in the thorough and scholarly opinion of the trial court, reported at 223 F.Supp. 803, with such modifications of that opinion as were effectuated by the subsequently entered findings of fact and conclusions of law. Our study of the record and briefs convinces us that the trial court opinion, as so modified, correctly analyzes and resolves the issues pertaining to these particular grounds of invalidity, and that the findings of fact upon which these legal conclusions are predicated are not clearly erroneous.

Perhaps this would be enough to say in support of the trial court findings and conclusions in question. However, we think it appropriate to discuss at some length what may perhaps be the primary ground on which the main patent was held to be invalid, indicating why we are in agreement with the trial court. We refer to the second reason set out in note 5, to the effect that the subject matter as a whole as set forth in the claims would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains. The statutory basis for this ground, as cited by the trial court, is 35 U.S.C. § 103 (1958).[6]

Appellants challenge the findings of fact and legal conclusions upon which this ground of patent invalidity is based.

The general subject matter of the main patent is a method of making reinforced plastic articles utilizing polyester resins and fiberglass, and an apparatus for performing it. The resins used in all methods employed in making reinforced plastic articles consist of resin-catalyst mixtures and resin-accelerator (promoter) mixtures which, when combined together harden within a short time into a hard plastic structural material. In all such methods fiberglass is used with these resins for purposes of reinforcement. Fiberglass was first made available for this purpose in the form of woven glass cloth or a chopped fiberglass matting.

The manufacture of reinforced plastic articles, such as small pleasure boats, was initially accomplished by either the "hand lay-up method" or the pre-form (matched metal die) method. The hand lay-up method consists in hand tailoring the glass fiber matting or cloth, or layers of both, fitting and draping the cut pieces to lay on or around the mold. The cloth and mat layers are then brushed or sprayed with a mixture of catalyzed and accelerated resin so that the fiberglass reinforced resins will harden to form a structural article or part which is subsequently removed from the mold.

The pre-form method consists in the use of pre-form equipment which includes a rotary cutter to chop or cut fiberglass rope or roving into small lengths which is then blown against a perforated mold. Simultaneously there is sprayed onto the chopped glass fibers a bonding resin. This molded pre-form of chopped bonded fibers is then placed between matched metal dies where additional bonding resin is poured onto the fibers to fully impreg-

---

6. Section 103 reads:
 "§ 103. Conditions for patentability; non-obvious subject matter
 "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patent-
ed and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

nate then. The dies are then closed and subjected to heat and pressure to compact and densify the fibers and to cause the bonding resin to quickly come into a hardened condition.

The method contemplated by the main patent is the simultaneous spraying of reinforcing fibers in conjunction with a liquid adhesive binder, whereby the liquid binder and fibers are deposited on a mold or other surface to build up a laminate or coating of reinforced plastic material of desired thickness. The apparatus for utilizing this method, as disclosed in the main patent, comprises essentially two component parts: (1) a pair of spray guns for simultaneous spraying usually a catalyzed resin through one gun and a promoter resin through a second gun for convergence at a point in the air in front of and close to the surface to be covered, and (2) a rotary cutter or chopper for cutting fiber roving into short fiber lengths and ejecting them into the converging resin sprays referred to above.[7] The cutter or chopper is mounted in the center of a metal frame, and the two spray guns are mounted on opposite ends of the frame.

As indicated above, and as conceded by appellants, the use of fiberglass and polyester resin in the manufacture of reinforced plastic articles was old in the art at the time of Anderson's asserted invention in July, 1952.

The trial court found, in effect, that the use of a spray gun to receive liquid plastic and air and emit an atomized spray of liquid plastic, was old in the art. This finding has support in the specification of the main patent where it is stated that the spray guns may be of any type adapted to such a purpose " * * * such as the gun disclosed in United States Patent No. 2,059,706." [8]

The trial court also found that the concept of simultaneously spraying a catalyzed resin through one spray gun and a promoter resin through another spray gun for externally mixing the two reactant adhesive components, was old in the art. This finding is confirmed by appellants' requested finding of fact No. 34.[9]

The trial court additionally found that the concept of using a rotary cutter or chopper to sever the fiberglass or other roving or rope-like strands of glass or other materials into shorter fiber lengths was old in the art. Among the prior patents establishing this, the court found, was the art evidenced by the Bacon patent (No. 2,702,261), Stotler patent (No. 2,719,836), Slayter patent (No. 2,618,817) and the Brenner and Turner pre-form cutters. All of these except the Slayter patent, were for bench cutters. The lat-

---

7. Although the main patent describes the apparatus as being "hand-held," certain additional basic equipment which cannot be hand held is also required. This additional equipment includes two resin tanks, an air compressor, a fiberglass roving supply, hoses, pumps, a mold and overhead booms or cable supports.

8. Anderson purchased and used in his apparatus a pair of Paasche spray guns, as conceded in appellants' requested finding of fact No. 35.

9. In requested finding of fact No. 34 it is recited that Anderson visited the Schori Process Division, Ferro-Co. Corporation, Long Island City, New York, in 1951, " * * * '[w]hile examining prior arts in the plastic field' * * * ." He there looked at the twin-headed spray gun which that company was then manufacturing. This proposed finding also recites that Anderson testified that the two-com-

ponent resin system which is described in the Schori brochure described the exact same resin system which he used and which he described in the patents in suit. According to this proposed finding, Anderson stated that he did not use the Schori gun in his apparatus because of the small space between the two spray heads (onefourth of an inch).

In their requested finding of fact No. 118, appellants state that the dual spray gun is not claimed, by itself, separate and apart from the other elements of the combination in the apparatus claims (claims 1, 2 and 5) of the main patent. They further state in this requested finding that the spraying of converging sprays of resin and catalyst, and resin and accelerator, separate and apart from the other steps in the method combination, is not claimed by itself, in the method claimed (claims 3, 4 and 6) of the main patent.

ter patent shows and describes a small hand-held glass cutter device.[10]

In our opinion, none of the findings referred to above is clearly erroneous. But appellants are not relying upon these individual elements as the apparatus claimed, or the way such elements are used as the method claimed. The main patent, they note, consists of the described combination of these elements as the apparatus claimed, and the described manner of using such combination as the method claimed.

The immediate question then, is whether the claimed combination of old elements and the claimed use of such combination is obvious within the meaning of section 103. As to this the trial court made several findings, some of which are quoted in the margin.[11]

Appellants argue that the trial court was led into error in making these findings of fact because it read the claims of the main patent too broadly. Instead of construing the claims solely in the light of the patent specifications, appellants assert, the court impermissibly referred to matters extraneous to the patent.

In finding of fact No. 21 the court found that the Anderson patents are not limited in scope specifically to the use of "glass" fiber roving, as distinguished from other types of fiber roving, nor to "polyester" plastics, as distinguished from other types of adhesive plastic binders. It was because of this broad reading of the claims in question, appellants argue, that the court was able to find that what was shown by the claims of the main patent was obvious from the prior art.

The so-called extraneous matters to which the district court referred in construing the scope of the main patent, are

---

10. Appellants note that Peterson Products introduced no evidence to show that the Slayter cutter was ever in fact used to cut fiberglass strands or roving. They also call attention to testimony indicating that it is extremely doubtful whether the Slayter gun could be used for that purpose. But, as the trial court found, and this is borne out by the record, Anderson admitted that the concept of constructing a small hand-held cutter occurred to him the moment he obtained and saw, in 1951, his first sample of commercially available glass fiber roving. His exact testimony was:

> "It occurred to me the moment I saw the roving, we got a sample of the roving and I tried cutting it with a pen-knife. It was obvious that it would very easily cut and no great power would be required."

11. "23. The two spray guns disclosed in the Anderson patents, and the rotary cutting or chopping device disclosed therein, both perform their normal expected and obvious functions when operated together as when operated separately; * * *

"25. The essential idea of simultaneously cutting, ejecting and spraying fibers and other materials with binders as shown in the prior art patent references specifically designated and relied on by defendant * * * would be reasonably within the knowledge of and appeal to the mind of a person having mechanical skill in the reinforced plastics field with

which Anderson was particularly familiar, * * *

"28. The combination of the Stotler type cutter with the Schori type spray -gun * * * would be an obvious combining of mechanical devices, particularly in that Anderson admitted having actual and specific knowledge of the Schori type spray gun and also of the Stotler type fiberglass cutter (as exemplified by the commercial Brenner and Turner cutters). Such combination includes all substantial and material elements claimed in Anderson '125 and '314 patents.

"29. The combination of the Slayter type cutter with the Lampe type spray gun * * * would be an obvious combining of mechanical devices within the ordinary skill of the art. Such combination includes all substantial and material elements claimed in the Anderson '125 patent.

"49. The early activities of Utility Trailer Mfg. Company, Richard C. Bradley, and Paramount Studios, even if not regarded as anticipating prior uses *per se*, illustrate that as soon as any form of glass strands or roving became available diverse persons and individuals in the industry perceived and put into practical use the concept of simultaneously spraying a polyester resin or equivalent binder in conjunction with short fiber lengths of glass fiber to build up a laminate of the desired thickness on a mold or other surface deposit."

specifically referred to in its finding of fact No. 21.[12] These materials tend to support finding No. 21.

It is questionable whether appellants are in a position to object to the action of the trial court in considering these sources of information, inasmuch as they have relied upon the same materials in proof of the date when Anderson imported his asserted invention from Canada to the United States (Anderson disclosure of July 22, 1953), and in proof of commercial success (license agreements). Moreover, there is substantial authority for the proposition that it is appropriate to consider the actions and statements against interest of the inventor or patent owner in construing the scope of a patent. See Jungersen v. Baden, 2 Cir., 166 F.2d 8C7, 809, aff'd 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235; Timken Detroit Axle Co. v. Cleveland Steel Prod. Corp., 6 Cir., 148 F.2d 267, 270.

But apart from these so-called extraneous materials the fact is, as the trial court stated in its finding of fact No. 21, that the only mention of fiberglass or polyester resin in either of the Anderson patents appears in its recital concerning the prior art. Neither the description of the alleged invention nor the claims of the patent are limited to either glass fibers or any particular type of bonding plastics. This circumstance alone is sufficient to support finding of fact No. 21. Thus, in determining the question of obviousness the court was not bound to restrict its review to prior art pertaining to glass fiber roving, as distinguished from other types of fiber roving, nor to polyester plastics, as distinguished from other types of adhesive plastic binders.

We conclude that the district court did not proceed improperly in construing the claims in question nor in reaching the conclusion that the main patent is not limited in scope as described in finding of fact No. 21.

Appellants argue that findings of fact relating to the question of obviousness are clearly erroneous in that they are not supported by substantial evidence.

In support of these findings there was some opinion testimony, primarily that of Dirks Foster, a patent attorney. Appellants think his testimony should not have been accorded much weight, but this was for the trial court to determine. The main support for these findings, however, comes from all of the evidence, testimony and exhibits bearing upon the state of the art prior to Anderson, and what he contributed to that art. As to some of the facts, the evidence is in conflict. But most of the evidence that is in conflict is susceptible of varying interpretations and evaluations and gives rise to a choice of inferences, all of which could reasonably appeal differently to one fact finder than to another.

Absent some plain signal that the trial court has gone far amiss, this court rarely finds reason for overturning findings so dependent upon such a process of appraisal. We perceive no such signal here. Nor, insofar as we can determine, did the trial court find the facts pertinent to this issue under the strictures of an erroneous view of the law. It did not, for example, find that the idea was obvious on the mistaken notion that all combinations of known elements are obvious.

Apart from such matters, the patience with which the court permitted full development of the facts at the trial, the care and analysis that went into its exhaustive reported opinion, the detail and completeness of the formal findings, formulated after thorough post-trial proceedings, bespeak our confidence in the findings stated.

It is therefore our view that the findings of fact relevant to the section 103 question are not clearly erroneous. We are also of the opinion that, given these facts, the trial court correctly applied the statutory proscription against the pat-

12. They are: (a) the Anderson disclosure of July 22, 1953, (b) Development's form of general license agreement, and (c) the license to Flintkote.

enting of that which is obvious, as stated in that section.[13]

Having determined that the trial court, for each of the first four reasons stated in note 5, correctly found and concluded that the main patent is invalid, we need not consider the additional reasons which that court gave for invalidating that patent. Nor need we consider the question of whether the court erred in holding that the main patent had not been infringed.

As indicated above, we here also uphold the trial court determination that claim 11 of the improvement patent is invalid for each of the reasons stated in the last sentence of note 5. But the court also held all claims of the improvement patent invalid for the sixth and seventh reasons stated in note 5. Had it not been for the counterclaim, challenging the validity of all claims of the improvement patent, this determination would not have been necessary since only claim 11 of the improvement patent was assertedly infringed. But since the issue of the validity of these claims of the improvement patent was presented by the counterclaim and adjudicated by the trial court adversely to appellant, we must deal with it.

The trial court in support of its conclusions of law that all claims of the improvement patent are invalid for the sixth and seventh reasons stated in note 5, found that the patent failed to specifically set forth certain information which was necessary for a satisfactory spray-up formulation. The factors are all directed at the use of the equipment for making fiberglass reinforced plastics.

That court, on the other hand, found that the patent was not limited in the descriptions or claims of the patent or in practical use to a method for making fiberglass reinforced plastics. Its uses include, for example, the spraying of tar and asphalt binder in conjunction with fiberglass or other fiber or material. We therefore see no reason why the patent, to comply with the requirements of 35 U.S.C. § 112, should single out and specify information used for making fiberglass reinforced plastics. Accordingly, we are of the opinion that the trial court erred in holding that the improvement patent is invalid for the sixth and seventh reasons stated in note 5.

This brings us to the second and third appeals referred to at the outset of this opinion. As previously stated, after appealing to this court from the judgment holding the patents invalid and not infringed, appellants moved in the district court, under Rule 60(b), Federal Rules of Civil Procedure, for a new trial on the ground of newly-discovered evidence pertaining to the asserted priority patent of Richard C. Bradley. At the same time, and to provide a basis for asking this court to remand the cause for the consideration of the Rule 60(b) motion, appellants moved in the district court for an order directing or indicating that it will "entertain and consider" appellants' accompanying motion made under Rule 60 (b).

The two motions were noted for hearing at the same time. In support of both motions, appellants filed an affidavit which presented factual and argumentative materials not only going to the merits of the Rule 60(b) motion, but also to the desirability of acting thereon prior to determination of the main appeal. In its memorandum filed in opposition to the motion for an order of the district court that it would "consider" a motion under Rule 60(b), defendant argued that, on its face, the Rule 60(b) motion is not based on newly-discovered evidence and that therefore there was no need for the delay occasioned by a remand of the proceedings to the district court.

13. It may be that, in most of what is discussed above, the trial court was actually dealing with a question of law rather than, as the parties have treated it, a question of fact subject to the clearly erroneous rule. Assuming that the question of obviousness is primarily one of law and not of fact we think that the trial court properly decided as a matter of law, that the accused device was obvious within the meaning of section 103.

In denying the motion for an order directing or indicating that the court will entertain a motion under Rule 60(b), the district court gave as its reason that the assertedly newly-discovered evidence would not lead the court to a conclusion different than that originally reached. No order was entered denying the Rule 60(b) motion and, indeed, no such order could have been entered prior to a remand, since the district court would have been without jurisdiction to do so.

Apparently both counsel for appellants and the district court thought that the procedure being followed was that which was suggested in Creamette Company v. Merlino, 9 Cir., 289 F.2d 569, and Greear v. Greear, 9 Cir., 288 F.2d 466, since both counsel and the court cited those decisions as authority for the procedure being followed.

However in both of those cases, it was stated that where a Rule 60(b) motion is made during the pendency of the appeal, the district court should be asked to indicate whether it would "grant" the motion, and if such an indication was given, the appellant should then move in the court of appeals for a remand.[14]

But, as indicated above, appellants did not ask the district court to indicate whether it would grant the Rule 60(b) motion, but only whether it would "en-tertain" that motion. In denying that motion the district court did not state that it was denying, or would deny, the Rule 60(b) motion, but only that it would not entertain it at that time. It is true that the reason it gave for this action went to the merits of the Rule 60(b) motion, but the fact remains that the latter motion was not acted upon at all.

Thus the procedure actually followed in the district court, instead of being that suggested in Creamette and Greear, was the procedure, subsequently suggested in Smith and Corey v. United States, 9 Cir., 294 F.2d 771, and thereafter followed in Paddock v. United States, 9 Cir., 302 F.2d 514; and Morgan v. United States, 9 Cir., 303 F.2d 647. In each of those cases the appellant was told to apply to the district court for an order indicating that it would "entertain" the motion for a new trial, and if such an order was entered, the appellant was advised to apply to the court of appeals for a remand.[15]

Since no order has been entered granting or denying the Rule 60(b) motion, but only orders of a procedural nature declining to direct or indicate that the district court will entertain and consider that motion during the pendency of the main appeal, such orders are interlocutory in nature and not final and appealable.[16] But while the second and

14. See also Zamloch v. United States, 9 Cir., 187 F.2d 854, and Ramirez v. United States, 9 Cir., 294 F.2d 277, where it was stated that the same procedure should be followed with regard to motions for a new trial based on newly-discovered evidence, made under Rule 33, Federal Rules of Criminal Procedure.

15. While these were criminal cases involving Rule 33, Federal Rules of Criminal Procedure, relating to motions for a new trial on the ground of newly-discovered evidence, we see no reason why the same procedure would not be applicable in civil cases. In Corn v. Guam Coral Co., 9 Cir., 318 F.2d 622, 630, we called attention to these two different procedures.

16. The appeals would also have to be dismissed if appellant had actually followed the Creamette and Greear procedure of asking the court to enter an order indi-cating that it would "grant" the Rule 60(b) motion. Denial of a motion for such an indication would be just as inter-locutory as denial of a motion for an in-dication that the district court would "en-tertain" the appeal. In either event, no district court action would have been taken on the Rule 60(b) motion, and none could have been taken prior to a remand. In Greear v. Greear, 9 Cir., 288 F.2d 466, it was indicated that an appellant may ap-peal from an order of the district court denying a Rule 60(b) motion, just as an appellee may appeal from an order grant-ing such a motion. But this could only happen if there had been a remand of the cause so that the district court would have jurisdiction to act upon the motion.

Where a district court has denied a mo-tion for an order indicating that it will "entertain" a Rule 60(b) motion pending in that court, the appellant may renew the

third appeals must for this reason be dismissed, this does not mean that appellants have been deprived of an adjudication of their Rule 60(b) motion. That motion was timely filed and if appellants find any virtue in pursuing it, having in view the several grounds on which we affirm, they are free to do so following the final disposition of this appeal.

Appellee's motion for the award of reasonable attorneys fees, pursuant to 35 U.S.C. § 285 (1958) is denied.

The final judgment of January 6, 1964 is affirmed insofar as it determines that the main patent (No. 2,933,125) is invalid and that claim 11 of the improvement patent (No. 2,787,314) is invalid. It is reversed insofar as it determines that the other claims of the improvement patent are invalid. The appeals from the orders entered on June 5, 1964, and June 22, 1964, are dismissed.

motion in the court of appeals. Regarding, as such a motion, appellants' second and third appeals, in the exercise of our discretion we deny the motion.